**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Robert PENSON and Harley G. Surratt, Defendants–Appellants.**

**Nos. 89–1863, 89–1864.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 9, 1990.

Decided March 2, 1990.

---

Michael C. Carr, Asst. U.S. Atty., Benton, Ill., for plaintiff-appellee.

Richard S. Emerson, Jr., Childs, Emerson, Rundlett, Fifield & Childs, Portland, Me., for defendant-appellant Robert Penson.

John R. Howes, Fort Lauderdale, Fla., for defendant-appellant Harley Surratt.

Before BAUER, Chief Judge,
CUMMINGS, Circuit Judge, and WILL, Senior District Judge.*

CUMMINGS, Circuit Judge.

On March 31, 1988, Harley Surratt and Robert Penson were indicted with five others on one count of conspiracy to distribute 1,000 pounds of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 846. Three of the five others pleaded guilty and received prison sentences ranging from four to twelve years. The other two were still at large when Surratt and Penson were arraigned and pleaded not guilty.

Penson and Surratt were tried together and a jury found them guilty. On April 14, 1989, Penson was sentenced to eight years' imprisonment and Surratt was sentenced to twelve years' imprisonment, and both defendants were ordered to pay a special assessment of $50. Both defendants have filed timely appeals of their convictions, alleging, among other things, errors in jury instructions and admission of evidence. Their convictions are affirmed.

---

* The Honorable Hubert L. Will, Senior District Judge for the Northern District of Illinois, is sitting by designation.

## I. The Conspiracy

During trial government witnesses described the importation and distribution of several shipments of marijuana spanning the period from March 1980 to February 1987. A number of individuals, in addition to Penson and Surratt, were involved in these shipments. These individuals included Randy Lanier, Benjamin Kramer, Charles Podesta, Jeffrey Tuchband, and William Baldwin, who helped arrange the shipments, and George Brock and Eugene Fisher, who supplied tugboats to transport the shipments. Some of these individuals testified against Penson and Surratt at trial. Their testimony established that Penson and Baldwin had marijuana dealings together in the late 1970s and early 1980s, and that some of these transactions also involved Charles Podesta. Podesta, in turn, was involved in the early 1980s in a partnership including Lanier and Kramer to import and distribute marijuana. In 1983, Podesta arranged a meeting with Lanier and Kramer to discuss bringing a load of approximately 30,000 pounds of marijuana into Connecticut. This meeting was also attended by George Brock, who had been introduced to Podesta by Penson and Baldwin.[1] In return for this introduction, Penson and Baldwin were to receive an allotment of approximately 500 pounds of this marijuana. This allotment was stored in a warehouse that had been rented by Penson in New York City. During the unloading of the Connecticut shipment, Penson and Baldwin were involved in an argument with other members of the conspiracy and were therefore excluded from further dealings with the group.

Beginning in 1984, the Lanier/Kramer organization began to use tractor trailer rigs to transport the marijuana they were bringing into the country. According to the testimony adduced at trial, defendant Surratt participated in this trucking operation on at least three occasions. His partic-

---

1. The government's brief inadvertently states that the introduction was by Penson and Surratt.

ipation consisted of supplying lettuce that was used to cover the marijuana so that it would escape detection during shipment. On one occasion he not only supplied the lettuce, but also either assisted in covering the marijuana with the lettuce or was present while it was covered. On this same occasion the lettuce-covered marijuana was transported in a truck bearing Surratt's name on the door.

## II. Defendants' Arguments

Penson advances two arguments to support his contention that the jury verdict against him should be reversed. First he argues that the trial court improperly admitted evidence against him of a cocaine transaction and marijuana dealings that were not covered by the indictment. Second he argues that he was part of a conspiracy different from and smaller than the conspiracy proven by the government. As part of this argument he contends that the trial court's failure to sever his trial from Surratt's was prejudicial, that the trial court's instructions to the jury regarding multiple conspiracy and knowledge of the conspiracy were erroneous, and that the trial court's refusal to grant his motion for acquittal was also erroneous.

Surratt advances three arguments to support his contention that the jury verdict against him should be reversed. First he argues that the government did not sufficiently identify him as a member of the conspiracy. Second he argues that the trial court did not properly instruct the jury on the distinction between willful association with admitted criminals and intent to participate in a conspiracy. Third he argues that the trial court improperly admitted evidence that he had used his truck to transport drugs for other organizations on other occasions.

### A. *Challenges to Jury Instructions*

■ Penson and Surratt both argue that the trial court erred in refusing to give their proposed jury instructions. In assessing claims of error in jury instructions, substantial discretion is given to the trial court with respect to the specific wording

of the instructions. *United States v. Garcia*, 562 F.2d 411, 416 (7th Cir.1977). In *United States v. Xheka*, 704 F.2d 974, 987 (1983), certiorari denied, 464 U.S. 993, 104 S.Ct. 486, 78 L.Ed.2d 682, this Court stated that "the [trial] court need not give a proposed instruction if the essential points are covered by those that are given."

### 1. *Defendant Surratt*

Surratt proposed that the jury be instructed that, "mere association with conspirators or those involved in a criminal enterprise is insufficient to prove a defendant's participation or membership in a conspiracy." The trial court refused this instruction and instead agreed to instruct the jury as follows:

> In order to establish the offense of conspiracy, the government must prove these elements beyond a reasonable doubt * * *. That the defendant knowingly and intentionally became a member of the conspiracy * * *. In determining whether the defendant became a member of the conspiracy you may consider only the acts and statements of that particular defendant * * *. The government must prove beyond a reasonable doubt from the defendant's own acts and statements, that he was aware of the common purpose and was a willing participant.

Tr. at 501–502.

■ Surratt argues that the last two sentences in this instruction were not given. The government contends that they were. The record includes a full transcript of the in-chambers conference regarding the proposed jury instructions. The transcript of this conference reveals that all four of the sentences quoted above were included in the government's tendered instruction number 17, which was accepted by the judge without objection from Surratt's counsel. The record also includes a copy of each proposed instruction typed on separate pages with the comments "given" or "refused" handwritten at the bottom of each page. The page on which the government's proposed instruction number 17 is written is marked "given." Since Judge Beatty's universal practice is to send the

instructions to the jury, we must presume that the instructions given were the same as those agreed upon.

■ The contents of the government's tendered instruction number 17 satisfy *Xheka's* mandate that the "essential points" of the applicable law be covered. The *Xheka* trial judge also rejected a mere association instruction in a conspiracy case and gave the pattern instruction that was given in this case instead. On appeal this Court held that this instruction was sufficient to alert the jury that the evidence must prove that the defendant "was a participant and not just an observer." 704 F.2d at 988. This conclusion is equally valid in Surratt's case. This is particularly true given the district judge's finding, in denying Penson and Surratt's motion for release pending appeal, that the evidence adduced at trial showed more than Surratt's mere presence at the scene of the crime.

### 2. Defendant Penson

■ Penson objects to the district court's refusal to give his proposed jury instructions on multiple conspiracy and knowledge of the conspiracy. The thrust of Penson's argument is that the jury was not given the opportunity to find that he was involved in some conspiracy other than the one charged in the indictment. Here again *Xheka* is controlling. Although the district judge refused Penson's proposed instructions, he did agree to instruct the jury as follows:

> You may judge the defendants only on charges alleged in the indictment. You may not convict them of any other alleged conspiracy in the event you should conclude that they have engaged in some other conspiracy. Therefore, if you are not convinced beyond a reasonable doubt that a particular defendant knowingly and intentionally joined the conspiracy

alleged in the indictment, you must find that defendant not guilty.

Tr. at 503–504.

Penson argues that this instruction does not adequately inform the jury about the sort of factual differences that would distinguish a single conspiracy from multiple conspiracies. In order to cure this perceived inadequacy, Penson proposed an additional instruction regarding knowledge of the conspiracy. The district judge was correct in concluding that neither of Penson's proposed instructions was necessary to comply with *Xheka's* requirement that the instruction given cover the "essential points" of the applicable law. The instruction, as given, clearly indicated that if conspiracies other than the one in the indictment were found to have existed, they could not be the basis of a conviction.

### B. Challenges to Admission of Evidence

The trial judge admitted evidence of prior criminal activity by both Penson and Surratt over their objections. Federal Rule of Evidence 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or fraud.

■ This Circuit has established a four-part test to determine the admissibility of evidence under Rule 404(b). *United States v. Shackleford,* 738 F.2d 776, 779 (7th Cir. 1984). Under this test prior bad act evidence may be admitted where (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged, (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue, (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act,[2] and (4) the probative value of

2. Originally the *Shackleford* test required clear and convincing evidence that the similar act was in fact committed. This clear and convincing requirement was recently invalidated by the Supreme Court in *Huddleston v. United States,* 485 U.S. 681, 685, 108 S.Ct. 1496, 1499, 99 L.Ed.2d 771 (1988).

the evidence is not substantially outweighed by the danger of unfair prejudice.

■ Review of a trial judge's determination of the admissibility of evidence under Rule 404(b) is governed by the abuse of discretion standard. *United States v. Troop*, 890 F.2d 1393, 1401 (7th Cir.1989); *United States v. Connelly*, 874 F.2d 412, 415 (7th Cir.1989).

### 1. *Defendant Surratt*

■ One of the government witnesses, Jeffrey Tuchband, testified about the arrangements that were made to locate trucks and truck drivers to transport the marijuana within the country. Tuchband stated that he knew of a man named Keith who in turn had a customer named Gene "who had a truck driver that had provided him with this exact service...." Tr. at 422. Surratt's lawyer immediately objected to this testimony and requested a sidebar conference. Surratt argues that this testimony was inadmissible both because it violated Rule 404(b) and because it was inadmissible hearsay. Significantly, neither of these arguments was specifically raised by Surratt's lawyer during the sidebar conference. Rather, Surratt's lawyer merely complained that the evidence was "completely inadmissible." *Id.* at 423.[3]

This Court has found that the appropriate standard of review of an alleged error shifts to the highly deferential plain error standard where the defendant has failed to make his objection with sufficient specificity. *United States v. Carroll*, 871 F.2d 689, 691–692 (1989) ("The appellant's failure to make a specific objection under 404(b) prevented the district court from considering the admissibility of the evidence as a prior bad act...."). Even under the abuse of discretion standard, however, defendant Surratt's argument with regard to this evidence is fruitless. During the sidebar conference the government argued that the evidence was necessary to explain why the other conspirators were willing to trust Surratt with the task they proposed to assign to him. Thus, the evidence served to explain how Surratt came to be associated with the other conspirators. The district judge correctly accepted this characterization. See *United States v. Marks*, 816 F.2d 1207 (7th Cir.1987) (evidence admissible since it explained the willingness of the kingpin to entrust drugs and cash to the defendant).

This evidence is also admissible under the *Shackleford* test. First, as discussed above, the evidence was intended to show how Surratt came to be associated with the conspiracy and thus was not intended to show that Surratt had a propensity to commit this sort of crime. Second the previous act was similar enough to be relevant since it was precisely because of its similarity that the other conspirators were persuaded that Surratt was trustworthy.[4] Third the evidence was sufficient to support a jury finding that the other act in fact occurred, since the jurors could reasonably have concluded that the other conspirators would

---

3. Although counsel made no reference to any particular rule of evidence during the sidebar conference, the thrust of his argument seems to be that the evidence is inadmissible under Fed. R.Evid. 801(d)(2)(E) (statement by a co-conspirator in furtherance of the conspiracy), because Keith and Gene were not co-conspirators. Tr. at 423. The government has not argued that Rule 801(d)(2)(E) supports the admission of this evidence and there is no indication that the trial judge admitted the evidence under that Rule.

4. It is true that Tuchband's single reference to Surratt having provided "this exact service" on a previous occasion does not shed any light on whether this prior conduct met the "close in time" requirement of the *Shackleford* test. We have been unable to find any case in which a reference to clearly similar conduct was barred because it occurred too far in time from the charged conduct. Nevertheless, to the extent that this failure to establish proximity in time might render the trial court's admission of this testimony erroneous, we find that the error is harmless. Tuchband's passing reference to Surratt's prior conduct was not necessary to support the jury's verdict that Surratt participated in the loading and hauling of marijuana for the Lanier/Kramer organization. See, *e.g., United States v. Monzon*, 869 F.2d 338 (7th Cir.1989) (admission of evidence harmless error even where prior conduct not similar to charged conduct), certiorari denied, — U.S. ——, 109 S.Ct. 2087, 104 L.Ed.2d 650; *United States v. Swiatek*, 819 F.2d 721 (7th Cir.1987) (same), certiorari denied, 484 U.S. 903, 108 S.Ct. 245, 98 L.Ed.2d 203.

not have relied on someone with no prior experience. Fourth the probative value of explaining to the jury how Surratt came to be associated with the other conspirators is not substantially outweighed by the danger of unfair prejudice. The record indicates that the judge agreed to instruct the jury that evidence of other acts not charged in the indictment was to be used "only on the question of the defendant's knowledge and intent." Tr. at 508. Consistent with the previous discussion of the jury instructions, and the judge's practice of sending them to the jury room, it is apparent that this instruction was in fact given to the jury, thereby mitigating any possible prejudice to the defendant. *United States v. Alpern*, 564 F.2d 755 (7th Cir.1977). Even in the absence of such an instruction, the facts in this case do not support the proposition that the trial judge abused his discretion in admitting evidence implying that Surratt had transported drugs for other individuals prior to his involvement in the conspiracy charged here.

■ To the extent that Surratt's objection to the evidence was based on the argument that it was hearsay, we agree with the government that it was admissible to show Surratt's "good" reputation in the drug-trafficking community. Fed.R.Evid. 803(21) permits such evidence as an exception to the hearsay rule.

### 2. *Defendant Penson*

■ Penson objects to the introduction of two pieces of evidence indicating his involvement with drugs outside of the conspiracy charged in the indictment. Penson's argument differs from Surratt's in that his lawyer specifically objected to the admission of one of the pieces of evidence on Rule 404 grounds as to general inadmissibility of character evidence including other crimes. Testimony of William Baldwin, Tr. at 41. Nevertheless, as with the prior conduct evidence against Surratt, the trial judge's decision to admit these two pieces of evidence was justified under *Shackleford* and *Marks*. Both pieces of evidence were offered to give the jury a complete picture of how Penson came to be involved

in the conspiracy. Furthermore, the limiting instruction discussed above was sufficient to mitigate any possible prejudice. The trial judge did not abuse his discretion in allowing the jury to hear about Penson's prior involvement with drugs, when that involvement was offered to show how Penson became involved with the conspiracy charged in the indictment.

### C. *Identification of Surratt*

■ Defendant Surratt maintains that the evidence at trial was insufficient to identify him as a member of the conspiracy. This argument merely reasserts that simple association with known criminals should not be the basis for a conspiracy conviction. The government does not dispute that mere association is insufficient. Rather, the government argues that the evidence at trial did more than establish Surratt's mere association with the other conspirators.

Surratt's burden in challenging the sufficiency of the evidence is a heavy one. In *United States v. Douglas*, 874 F.2d 1145, 1151 (1989), certiorari denied *sub nom. Pruitt v. United States*, — U.S. —, 110 S.Ct. 126, 107 L.Ed.2d 87, this Court stated that a conviction must be affirmed if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Surratt argues that evidence of his mere presence while the marijuana was being loaded and covered with lettuce does not demonstrate that he knowingly participated in the conspiracy. One of the government's witnesses, Jeffrey Tuchband, testified that Surratt did not merely deliver a load of lettuce to the warehouse, but was near the truck while 60,000 pounds of marijuana was being loaded. According to Tuchband this loading procedure caused the air surrounding the truck to fill with the dust and the odor of marijuana. Tuchband further testified that Surratt helped cover the marijuana with the lettuce. Surratt now asks this Court to believe that he could not recognize marijuana by sight or smell, and in addition that he found nothing unusual about covering an enormous load of unknown material with

lettuce. Based on the evidence adduced at trial, it would have been irrational for the jury to have found that Surratt was ignorant of what was going on around him.

Surratt also contends that only two of the numerous government witnesses specifically identified him as the individual who transported lettuce and witnessed or participated in the camouflaging of the truckload of marijuana. He concedes that other witnesses referred to the participation of someone named "Harley," (defendant Surratt's first name) but he argues that such an identification is insufficient. This argument must fail, since the testimony of only one witness would suffice to establish Surratt's participation in the conspiracy if the jury determined to credit that testimony. See *Brown v. Bowen*, 847 F.2d 342, 344 (7th Cir.1988).

Furthermore, there is ample precedent that inference and circumstantial evidence are sufficient to establish that the "John Doe" referred to by various witnesses is in fact the same "John Doe" as the defendant. See, *e.g., United States v. Weed*, 689 F.2d 752, 754–755 (7th Cir.1982); *United States v. Cooper*, 733 F.2d 91, 92 (11th Cir.1984). Surratt maintains that the Fifth Circuit's decision in *United States v. Darrell*, 629 F.2d 1089 (1980), supports his argument that he was not sufficiently identified. In *Darrell*, the court acknowledged that circumstantial evidence would suffice, but reversed a conviction where no evidence connected the defendant seated in court with the individual being named by the witnesses. Surratt cannot and does not argue that *no* evidence was offered during his trial to support the inference that he is the "Harley" named by various witnesses. Therefore, *Darrell* is inapposite.

The government's evidence at trial was sufficient to establish that the defendant Harley Surratt was a member of the conspiracy charged in the indictment.

### D. *Penson's Motion to Sever and Motion to Acquit*

■ Defendant Penson contends that he was unduly prejudiced by the trial court's refusal to sever his trial from that of Harley Surratt. He also argues that the trial judge erred in denying his motion for a judgment of acquittal. Both of these arguments are based on Penson's assertion that his activities were unconnected, in time and in manner, to those of Harley Surratt and to the rest of the conspiracy. A decision not to sever the trials of co-defendants is one within the sound discretion of the trial court and should be overturned only if it is found to be a clear abuse of discretion. *United States v. Percival*, 756 F.2d 600, 610 (7th Cir.1985). The standard of review of a denial of a motion for judgment of acquittal under Federal Rule of Criminal Procedure 29 is "whether at the time of the motion there was relevant evidence from which the jury could reasonably find [the defendant] guilty beyond a reasonable doubt...." *United States v. Blasco*, 581 F.2d 681, 684 (7th Cir.1978), certiorari denied, 439 U.S. 966, 99 S.Ct. 456, 58 L.Ed.2d 425.

■ The government does not dispute that Penson and Surratt had separate connections to the conspiracy. Instead, the government correctly asserts that its burden is not to show that each conspirator knew the others or knew the entire breadth of the conspiracy, but rather to show that each defendant knew the purpose of the conspiracy and intended to join it and further its ends. *United States v. Moya–Gomez*, 860 F.2d 706, 758 (7th Cir.1988) ("Even a slight connection between the defendant and the conspiracy may support a conviction."), certiorari denied *sub nom. Estevez v. United States*, —— U.S. ——, 109 S.Ct. 3221, 106 L.Ed.2d 571 (1989).

According to the testimony of Charles Podesta, Penson knew as early as 1979 that Podesta was a source for large amounts of marijuana. The jury could reasonably infer from this information alone that Podesta was involved in some larger scheme to bring drugs into the country and distribute them. The jury did not need to make such an inference, however, because additional evidence was presented that linked Podesta to Lanier and Kramer. In addition, the evidence established that Penson provided the crucial introduction of tugboat owner

Brock who made the Connecticut shipment possible.

This situation is analogous to that in the seminal Supreme Court case on the subject of multiple conspiracies, *Blumenthal v. United States*, 332 U.S. 539, 68 S.Ct. 248, 92 L.Ed. 154 (1947). In *Blumenthal* several co-defendants each arranged with the central figures of an alleged conspiracy to sell whiskey at inflated prices. The Court concluded that each arrangement was part of a single conspiracy and that the co-defendants must have known that they were part of a larger overall scheme:

> [The defendants] knew or must have known that others unknown to them were sharing in so large a project; and it hardly can be sufficient to relieve them that they did not know, when they joined the scheme, who those people were or exactly the parts they were playing in carrying out the common design and object of all.

Similarly, Penson must have known that the 500–pound allotment he was to receive in return for introducing Brock to the Lanier/Kramer organization was only a small part of the total shipment that was to come into Connecticut. Therefore, like the co-defendants in *Blumenthal*, Penson cannot be relieved of complicity in the conspiracy merely because he did not know exactly who else was involved or what parts the others were playing. Penson knew that the objective of all was to import and distribute marijuana. By proving that knowledge the government met its burden.

### III. Conclusion

For the reasons set forth above, the convictions of Robert Penson and Harley Surratt are affirmed.