**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Alan SCOP and Raphael Bloom,
Defendants–Appellants.**

**Nos. 90–1528, 90–1571.**

United States Court of Appeals,
Seventh Circuit.

Argued June 13, 1991.

Decided Aug. 13, 1991.

Barry R. Elden, Asst. U.S. Atty., Sergio E. Acosta (argued), Office of U.S. Atty., Crim. Receiving, Appellate Div., Chicago, Ill., for plaintiff-appellee.

Lynn Esp (argued), Rosenthal & Schanfield, Richard S. Kling, IIT Chicago–Kent School of Law, Greta Fell Carl, Rosenthal & Schanfield, Chicago, Ill., for defendant-appellant Alan Scop.

Frank Freeman (argued), Miami, Fla., for defendant-appellant Raphael Bloom.

Before CUMMINGS and RIPPLE, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

CUMMINGS, Circuit Judge.

In July 1986 a fourteen-count indictment was returned against Alan Scop, Raphael Bloom and four individuals not involved in this appeal, Sam Sarcinelli, Herbert Stone, Gary Brustein and Jack Ringer. The first count charged all defendants with a conspiracy to commit mail and securities fraud in violation of 18 U.S.C. § 371. In Counts Two through Seven they were charged with mail fraud in violation of 18 U.S.C. § 1341. Counts Eight through Thirteen charged them with securities fraud in violation of 15 U.S.C. § 78j(b). Count Fourteen charged Bloom with making false declarations before a grand jury in violation of 18 U.S.C. § 1623 and Count Fifteen charged Stone with the same offense.

The indictment was returned in the Northern District of Illinois, but on joint motion of five of the defendants venue was transferred to the Southern District of New York. Sarcinelli, the sixth defendant, had already entered into a plea agreement with the government. A jury convicted four defendants on all counts, but defendant Brustein was acquitted by the district court at the close of the government's case. Scop, Bloom, Stone and Ringer appealed to the Second Circuit, which affirmed the convictions of Bloom and Stone for perjury under Counts Fourteen and Fifteen but reversed all the convictions on Counts One through Thirteen because the court considered that the testimony of a government witness should not have been admitted and constituted reversible error. *United States v. Scop*, 846 F.2d 135 (2nd Cir.1988). On rehearing, the court also reversed the convictions of Bloom and Stone on Counts Fourteen and Fifteen because of the prejudicial effects of the government expert's improper testimony. *United States v. Scop*, 856 F.2d 5 (2nd Cir.1988). For re-trial, venue was transferred back to the Northern District of Illinois.

In October 1989 the second jury trial against Ringer, Scop and Bloom commenced,[1] and the jury found Ringer and

1. In September 1989 Stone had pled guilty to Counts One through Thirteen and Count Fifteen. He received a two-year sentence under Count One and concurrent terms of two years as to Count Two through Twelve. He was placed on probation for five years as to Counts Thirteen

Bloom guilty on all counts in which they were named. Scop was found guilty on conspiracy Count One and the securities fraud Counts Eight through Thirteen but was acquitted on mail fraud Counts Two through Seven. Scop's and Bloom's post-trial motions for acquittal were denied. Bloom was sentenced to three years under Counts One through Twelve and one year under Count Fourteen, to run consecutively. He was also sentenced to five years' probation on Count Thirteen and ordered to pay $223,586.48 restitution as a condition of probation.

Scop was sentenced to three years' incarceration under Count One and five years' probation under Counts Eight through Thirteen. He was also ordered to pay $223,586.48 restitution. Ringer was made jointly liable with Bloom and Scop for the full amount of restitution. The balance of Ringer's sentence is not revealed in the record before us. He has withdrawn his appeal.

The Second Circuit set forth the facts in detail at 846 F.2d 135. We will outline them briefly and elaborate when necessary below. The indictment alleged that from 1979 through 1982 the defendants engaged in a scheme to manipulate the stock of a New York corporation known as European Auto Classics, Ltd. ("EAC"). Defendant Ringer started EAC and was its general manager. Scop was the president and sole broker of Amfco Securities, a firm Ringer hired to be co-underwriter for EAC's initial public offering. Stone was a broker at Norbay Securities, the other co-underwriter. Viewed in the light most favorable to the government, the evidence at trial established the following. Scop, Stone and Ringer prepared and issued a false and misleading offering circular prior to the initial public offering of EAC stock. They then bought up large blocks of the stock by using accounts opened in others' names. As participants in the offering they were forbidden from purchasing EAC stock. See SEC Rule 10b-6, 17 C.F.R. § 240.10b-6. After the offering closed in April 1980, these defendants began artifi-

cially raising the price of the stock by conducting matched stock trades at progressively higher prices. They sold off the EAC shares they had acquired to innocent investors induced to pay the inflated prices. Sarcinelli met Ringer for the first time in May 1980 and subsequently aided Ringer, Scop and Stone in the EAC stock manipulation. Sarcinelli testified he brought Bloom into the scheme that summer. Bloom, who was a general partner at the brokerage firm of J.W. Kaufmann, had been engaged in helping Sarcinelli to control the price of stock in another company, Sundance Gold Mining ("Sundance"). The EAC scheme continued until the fall of 1980, when Sarcinelli came to suspect that his accomplice Stone was "back-dooring" him, in other words, selling EAC stock in contravention of the plan. Sarcinelli then ended his involvement but the others continued trading in EAC stock throughout 1981.

## I. Scop's Appeal

### A. Inconsistency in the verdict

■ Because the same overt acts, a series of mailings and telephone calls, were alleged in support of both the mail fraud and securities fraud charges, the jury's verdict acquitting Scop on Counts Two through Seven is inconsistent with his convictions on Count One and Counts Eight through Thirteen.

It is well settled that an inconsistency between jury verdicts does not call for reversal of a conviction in a criminal case. *United States v. Powell,* 469 U.S. 57, 69, 105 S.Ct. 471, 479, 83 L.Ed.2d 461; *United States v. Grier,* 866 F.2d 908, 928 (7th Cir.1989). In *Powell,* a unanimous Supreme Court held that a defendant's conviction for using the telephone to facilitate a felony, in violation of 21 U.S.C. § 843(b), could not be reversed even if the defendant had been acquitted by the jury of the underlying felony. *Id.* The Court noted that when a jury returns inconsistent verdicts, it is impossible to determine which party has been prejudiced. It can be said that the

and Fifteen and ordered to make restitution in the amount of $50,000.

government received a windfall, but it is "equally possible that the jury, [though] convinced of guilt, * * * through mistake, compromise, or lenity, arrived at an inconsistent conclusion." 469 U.S. at 65, 105 S.Ct. at 476. Moreover, the government is prevented from upsetting the acquittal by the Double Jeopardy Clause. The Court concluded, "Given [the] uncertainty, and the fact that the Government is precluded from challenging the acquittal, it is hardly satisfactory to allow the defendant to receive a new trial on the conviction as a matter of course." *Id.* The defendant against whom inconsistent verdicts are returned remains protected because he or she can challenge the conviction on grounds of insufficiency of the evidence. *Id.* at 67, 105 S.Ct. at 477.

■ In response to *Powell,* Scop offers to waive the right afforded him by the Double Jeopardy Clause and subject himself to re-trial on all counts in return for a reversal of his convictions on the securities fraud and conspiracy counts. *Powell* admittedly did not address the legal effect to be given an offer to waive double jeopardy in cases of inconsistent verdicts. However, Scop's argument comes too late to help him. Scop did not indicate his willingness to waive double jeopardy and be re-tried on all counts at the time the jury returned its verdicts, or in his post-trial motion for acquittal, filed twelve days later. A request for a new trial would properly have been directed at the district court. See Fed.R. Crim.P. 33. In the absence of a proper motion by the defendant, a judge obviously cannot presume that a defendant is waiving his double jeopardy rights and is willing to be re-tried. See *United States v. Smith,* 331 U.S. 469, 474, 67 S.Ct. 1330, 1333, 91 L.Ed. 1610. Scop waived his right to a new trial, and because the district judge committed no plain error by failing *sua sponte* to authorize a re-trial, see Fed. R.Crim.P. 52(b), we decline to consider the argument Scop raises on appeal regarding

*Powell*'s inapplicability in a case in which defendant waives double jeopardy.

### B. Admission of evidence of Scop's manipulation of stocks not named in indictment

■ The indictment charged Scop with manipulation of EAC stock, but the district court admitted evidence that he also engaged in manipulating Sundance and Enerdine stock. The government proffered this evidence on alternative grounds. First it argued that the evidence was admissible as substantive evidence of the scheme alleged in the indictment because it was "intertwined with the evidence regarding the charged offense, and was necessary to complete the story of the crime." *United States v. Towne,* 870 F.2d 880, 886 (2nd Cir.1989), certiorari denied, 490 U.S. 1101, 109 S.Ct. 2456, 104 L.Ed.2d 1010; *United States v. Weeks,* 716 F.2d 830, 832 (11th Cir.1983). In addition, the government argued that even if the evidence was considered "other crimes" evidence under Fed. R.Evid. 404(b), it proved intent, common scheme or plan, and the relationship among co-conspirators, and thus could qualify for admission under that same rule.[2] Though the district judge originally found the evidence admissible under both rationales, at the end of trial the jury was instructed to consider the evidence only for the limited purpose of determining defendants' "intent, opportunity, or plan to engage in the offenses charged, or * * * relationship with another defendant" (R. 274; Tr. 2141). We will presume that the jury followed this instruction given by Judge Rovner, *Opper v. United States,* 348 U.S. 84, 95, 75 S.Ct. 158, 165, 99 L.Ed. 101 (jurors' ability to follow instructions is foundation upon which "our theory of trial" rests), and did not consider the evidence concerning Sundance and Enerdine as substantive evidence of the EAC scheme. The only remaining question is whether the evidence was properly admitted under Rule 404(b).

**2.** Fed.R.Evid. 404(b) provides: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show conformity therewith. It may, however, be ad-

missible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or fraud."

A four-part test determines the admissibility of evidence under Rule 404(b). *United States v. Penson*, 896 F.2d 1087, 1091 (7th Cir.1990). Other crimes evidence may be admitted where:

(1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged, (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue, (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act, and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.

*Id.* Scop concedes that the evidence relating to the manipulation of Sundance and Enerdine stock meets the first three prongs of the test (Br. 35). He argues only that the probative value of this evidence was substantially outweighed by the danger of unfair prejudice and therefore inadmissible. We accord a trial judge's assessment of relative probative value and unfair prejudice "great deference because of his [or her] first-hand exposure to the evidence and * * * familiarity with the course of the trial proceeding." *United States v. Briscoe*, 896 F.2d 1476, 1498 (7th Cir.1990) (applying Fed.R.Evid. 403), certiorari denied *sub nom. Usman v. United States*, — U.S. —, 111 S.Ct. 173, 112 L.Ed.2d 137.

As the district judge noted in a pre-trial order (R. 194), the evidence regarding Enerdine and Sundance was highly probative because it revealed a common and indeed inseparable scheme. The defendants traded in Enerdine and Sundance stock at the same time they carried out the allegedly fraudulent EAC trades. They victimized some of the same investors in manipulating the three different stocks. The defendants used identical methods of price manipulation with respect to the stock in each company: they arranged matched trades between accounts they controlled and clients they could influence and they exchanged information about their customers' holdings and recent trades. The evidence about the manipulation of Enerdine and Sundance stock was properly used to reveal the common pattern of a crime that is not commonplace. See *United States v. Jones*, 438 F.2d 461, 466 (7th Cir.1971).

Some of the evidence also was critical to the jury's understanding of the relationship between the defendants. For example, Ringer offered Sarcinelli some Enerdine stock as a *quid pro quo* for his help in manipulating EAC stock prices. Sarcinelli later received a million EAC shares through Scop's firm Amfco. Also, it was because of Sarcinelli's prior experience in trading Enerdine and Sundance that he was recruited to join the EAC scheme. Other acts evidence is admissible to complete the story of defendants' familiarity or relationship. See *United States v. Alamo*, 872 F.2d 202, 207 (7th Cir.1989) (other acts evidence admissible to show "working relationship" between defendants in cocaine conspiracy); *United States v. Liefer*, 778 F.2d 1236, 1252 (7th Cir.1985) (evidence admissible to show how conspiracy developed and why defendants trusted one another). Here the evidence was helpful and even necessary to round out the jury's understanding of the conspirators' debts and attachments to one another.

The evidence also was not unduly prejudicial. It concerned truly similar activities rather than inflammatory criminal acts. Scop argues that the other acts evidence was cumulative and invited the jury to find him guilty for manipulating Enerdine and Sundance stock rather than EAC stock. The district judge specifically considered this possibility and found that the probative value was not outweighed (R. 194 at 18). We agree. Though undoubtedly much evidence at trial concerned Enerdine and Sundance, there was no shortage of evidence regarding Scop's use of nominee accounts, for example, to buy EAC shares. The evidence was properly admitted.

*C. Overt acts outside the statute of limitations*

Scop contends that because many of the overt acts alleged in the indictment and proven at trial occurred outside the statute of limitations, this Court should reverse the convictions. The indictment alleged 26

overt acts in furtherance of the conspiracy that occurred after July 22, 1981, and thus within the five-year statute of limitations contained in 18 U.S.C. § 3282. Scop acknowledges that his prosecution is not time-barred so long as the conspiracy existed, he was a member of the conspiracy at some point in the five years preceding the indictment, and one of his co-conspirators committed one of the overt acts within the limitations period. See *United States v. Read*, 658 F.2d 1225, 1232–1233 (7th Cir. 1981). The jury was properly instructed as to the applicable law. From the verdicts, it is apparent the jury found that at least one overt act had occurred on or after July 21, 1981, that Scop was a member of the conspiracy on or after that same date and that he was vicariously if not personally responsible for at least one overt act occurring within the limitations period. See *Pinkerton v. United States*, 328 U.S. 640, 647, 66 S.Ct. 1180, 1184, 90 L.Ed. 1489.

Scop argues that in spite of the "technical" correctness of his conviction and of the admission of evidence relating to conspiratorial activity before July 21, 1981, this Court should exercise its "supervisory powers" to overturn what he characterizes as an "unfair" conviction (Br. 40).

■ This Court cannot by means of its supervisory powers reverse Scop's conviction. Supervisory powers enable a court to set procedural rules that promote the administration of justice when such rules have not been provided by statute. See *United States v. Widgery*, 778 F.2d 325, 328–329 (7th Cir.1985). However, they do not allow a court to "disregard a rule or statute * * * [or the] considered limitations of the law it is charged with enforcing." *Id.* at 329. In other words, we cannot reverse a conviction that is only "technically" correct. The evidence was admitted and the conviction returned under established principles of law. Supervisory powers do not allow this Court to require more.

### D. Restitution

■ Finally, Scop complains about the fact that Sarcinelli was excused from making restitution by the terms of his plea agreement. Scop, Bloom and Ringer are jointly and severally liable in the amount of $223,586.48. Scop argues that "In the real world being jointly and severally liable for a debt with two other people is worse than being jointly and severally liable with three other people" (Br. 42).

■ This argument is nonsensical. By definition, being jointly and severally liable means that each individual remains responsible for payment of the entire liability, so long as any part is unpaid. Restatement (Second) of Torts, § 875 (1979); *Watts v. Laurent*, 774 F.2d 168, 179 (7th Cir.1985), certiorari denied, 475 U.S. 1085, 106 S.Ct. 1466, 89 L.Ed.2d 722. Thus the exclusion of Sarcinelli from the restitution order did not prejudice Scop. Also, Scop has cited no authority to show that the contents of a plea agreement with one defendant must limit the sentence imposed on another. There is no allegation that the district court imposed a sentence beyond the statutory limits. There is no requirement, constitutional or otherwise, that persons convicted of the same crime must receive the same sentence. *Williams v. Illinois*, 399 U.S. 235, 243, 90 S.Ct. 2018, 2023, 26 L.Ed.2d 586. The district court had the discretion to sentence Sarcinelli differently in light of his guilty plea and cooperation with the government. Typically when one defendant agrees to cooperate with the government, the preferential treatment he receives comes "at the expense," so to speak, of the other defendants. The district court's failure to require Sarcinelli to pay restitution does not exonerate Scop, Bloom and Ringer from being jointly and severally liable for the amount of restitution imposed.

## II. Bloom's appeal

### A. Evidence of Bloom's participation in conspiracy

■ Bloom argues that the evidence was insufficient to prove that he knowingly participated in the conspiracy. In reviewing the conspiracy conviction, we view the evidence in the light most favorable to the government. See *United States v. Dur-*

*rive,* 902 F.2d 1221, 1229 (7th Cir.1990). The verdict will be sustained if there is substantial evidence to support it. *Id.*

The following discussion summarizes the evidence relevant to Bloom, construed in the light most favorable to the government. Sarcinelli testified that in the summer of 1980, he advised Bloom of his own and the others' involvement in EAC stock manipulation (Tr. 171–172). Sarcinelli used accounts under his control at the Kaufmann firm in furtherance of the scheme by directing Bloom to sell EAC stock only from those accounts at pre-arranged prices. Sarcinelli and Bloom also agreed that any purchases of EAC stock would be paid for by Sarcinelli. Sarcinelli assured Bloom that Bloom would never incur a debt for any EAC transaction. Later Sarcinelli and Bloom agreed that Bloom would keep EAC stock in his own trading account and sell it to customers at prices the pair had set, splitting the profits with Sarcinelli. Bloom communicated with Sarcinelli almost on a daily basis and routinely sent transaction confirmations to Sarcinelli, thus enabling Sarcinelli to determine how much of the manipulated stock he controlled. Even after Sarcinelli ended his involvement in the conspiracy, Bloom, Scop, Ringer and Stone continued to trade EAC stock, and Bloom encouraged his customers to hold onto their shares even when they desired to sell.

 Bloom makes only two weak arguments in support of his challenge to the sufficiency of the evidence. First he points out that he did not join the conspiracy at the outset and did not participate, for example, in the preparation of the offering circular. This argument is beside the point because Bloom need not have participated in all conspiratorial acts to have become a member of the conspiracy. *See United States v. Muehlbauer,* 892 F.2d 664, 667 (7th Cir.1990) (government need only prove conspiracy and "participatory link" with defendant and defendant's awareness of "essential features and broad scope" of the conspiracy). Second, Bloom challenges Sarcinelli's statements about Bloom's

knowledge. He argues, for example, that Sarcinelli never told him about the larger plan to raise artificially the EAC stock price, and that he executed trades for Sarcinelli without thinking them improper. Credibility determinations, however, are left to the jury. *United States v. Noble,* 754 F.2d 1324, 1332 (7th Cir.1985), certiorari denied, 474 U.S. 818, 106 S.Ct. 63, 88 L.Ed.2d 51. The jury chose to believe Sarcinelli's testimony that Bloom knew the essential purpose of the scheme. The jury also interpreted Bloom's later actions as the execution of the conspiracy's plan rather than the innocent trades of one unaware of any impropriety.

The evidence was ample to support the jury's determination that Bloom was a knowing participant in the conspiracy. Bloom's conviction on Count I will not be overturned.

## B. Bloom's perjury conviction

To overturn his perjury conviction Bloom attacks the perjury instruction given by the district court and also denies that his response to a question about manipulation was perjurious.

### 1. The perjury instruction

 Bloom did not object to Judge Rovner's instruction to the jury about the elements of perjury, and plain error has not been shown within Rule 52(b) of the Federal Rules of Criminal Procedure. The instruction given under 18 U.S.C. § 1623 required the government to prove:

First, that the defendant Raphael Bloom, while under oath, made one or more false declarations or answers as to matters about which he testified before a United States grand jury as charged in the indictment;

Second, that the defendant's testimony related to some material fact; and

Third, that the defendant knew the testimony was false.

(Tr. 2153).[3] This instruction was taken largely from this Circuit's Federal Criminal

---

**3.** The balance of the perjury instruction provided:

If you find from your consideration of all the evidence that each of these propositions

Jury Instructions and is a proper statement of the law. *United States v. Serola*, 767 F.2d 364, 373 (7th Cir.1985). Bloom has shown no basis for overturning the instruction.

### 2. Stock manipulation charged in perjury count

■ Count Fourteen charged Bloom with making false declarations to the grand jury because he denied any knowledge of Scop's and others' stock manipulation of specified stocks. Before the grand jury, the following colloquy occurred:

Q: Do you know * * * of * * * anyone else using European Auto, Sundance, TONM, Enerdine for purposes of either manipulating those stocks or for laundering illegal money?

Bloom: I really don't know.

(Tr. 1634). Bloom made other similar denials. Count Fourteen asserted that Bloom, in spite of his answers to the grand jury, did participate with others to manipulate the price of EAC stock.

To set aside his conviction under this count, Bloom first argues manipulation "is not a statement of fact, [but] is a conclusion of law" and thus cannot serve as the basis for a perjury conviction (Br. 14). He cites *United States v. Endo*, 635 F.2d 321, 323 (4th Cir.1980), for the proposition that a defendant cannot perjure himself or herself by giving inconsistent answers to the question, "are you guilty?" Statements relating to one's own guilt, prior to conviction, are considered statements of opinion and cannot be perjurious.

■ Bloom's argument is without merit. The term "stock manipulation" has various meanings. Some of the definitions are undeniably legal, see, *e.g., Mobil Corp. v. Marathon Oil Co.*, 669 F.2d 366, 374–376 (6th Cir.1981) (act may be manipulative in connection with tender offer under Section 14(e) of Williams Act if act artificially affects market for, or price of, security), cer-

tiorari denied, 455 U.S. 982, 102 S.Ct. 1490, 71 L.Ed.2d 691, but the term is also commonly used in the securities industry. An answer relating to a term susceptible of various meanings can be found perjurious so long as the jury can adequately assess from the testimony the defendant's understanding of the term and thus the falsity of his or her statements with respect to that term.

[T]he possibility that a question or an answer may have a number of interpretations does not invalidate either an indictment or a conviction * * * which * * * requires the jury to determine that the question *as the defendant understood it* was falsely answered in order to convict.

*United States v. Williams*, 536 F.2d 1202, 1205 (7th Cir.1976) (emphasis supplied), quoting *United States v. Chapin*, 515 F.2d 1274, 1280 (D.C.Cir.1975), certiorari denied, 423 U.S. 1015, 96 S.Ct. 449, 46 L.Ed.2d 387.

The jury had ample information from which to judge Bloom's understanding of "manipulation" and the truthfulness of his answers before the grand jury. In answering questions before the grand jury, Bloom expressed no confusion as to his definition of "manipulation." The transcript of the grand jury testimony, which was read in its entirety to the trial jury, reveals that Bloom was asked in particular about brokers "artificially creat[ing] trades to give the appearance on the market that a stock was being actively traded" (Tr. 1631) and exchanging information about their clients' holdings and trades (Tr. 1618). The jury could conclude from this context that when Bloom testified he knew of no manipulation, he was denying that he had participated in this type of conduct and not merely expressing his personal opinion that he was not guilty of committing a crime. The jury then was capable of assessing whether Bloom's statements were false.

■ Bloom also argues that the jury could impermissibly have found him guilty of perjury in connection with money laun-

has been proved beyond a reasonable doubt, then you should find the defendant Raphael Bloom guilty.

If, on the other hand, you find from your consideration of all the evidence that any one

of these propositions has not been proved beyond a reasonable doubt, then you should find the defendant Raphael Bloom not guilty.

dering. One of Bloom's allegedly perjurious statements was made in response to a question asking if he knew of any manipulation or money laundering. Bloom was not subsequently accused of money laundering.

It is apparent that the jury convicted Bloom of perjury with respect to stock manipulation. Bloom admits that "There never was a contention made in the indictment that money laundering was involved in the case nor was there ever any evidence presented concerning money laundering" (Br. 14). Also, the indictment in Count Fourteen clearly charges that Bloom's statement was perjury because he "participated in a scheme with defendant Sarcinelli and others to manipulate the price of European Auto common stock" and does not reference the portion of the question concerning money laundering. Considering all the information before the jury, it could not possibly have believed that Bloom was accused of making false statements related to money laundering.

### C. Double jeopardy argument

In his brief, Bloom has sought to adopt Scop's double jeopardy argument (*supra* at 1007). However, any reference to double jeopardy by Scop was in connection with his inconsistent verdict argument. Since no inconsistent verdicts were returned as to Bloom, Scop's double jeopardy argument does not apply to him.

Scop's and Bloom's convictions are affirmed.