**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Dennis M. LENNARTZ, Defendant–
Appellant.**

No. 90–1770.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 19, 1991.

Decided Nov. 21, 1991.

Rehearing Denied Jan. 8, 1992.

Andrew B. Baker, Jr., Asst. U.S. Atty. (argued), Office of the U.S. Atty., Dyer, Ind., William T. Grimmer, Asst. U.S. Atty., Office of the U.S. Atty., South Bend, Ind., for plaintiff-appellee.

Randall R. Fearnow (argued), Michael R. Franceschini, Steers, Sullivan, McNamar &

**364**

Rogers, Indianapolis, Ind., Chris Potts, South Bend, Ind., Thomas J. O'Brien, Donahue, O'Brien & Morrissey, Lafayette, Ind., for defendant-appellant.

Before WOOD, Jr., POSNER and MANION, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

A grand jury indictment charged defendant-appellant Dennis Lennartz with eighteen counts of mail fraud, in violation of 18 U.S.C. § 1341, and one count of making a false Medicaid claim, in violation of 18 U.S.C. § 1001. After a sixteen-day trial, the jury convicted him on six of the mail fraud counts. Lennartz now appeals his conviction arguing (1) that the district court erred by admitting, for a purpose not allowed by Federal Rule of Evidence 404(b), testimony regarding prior uncharged misconduct by Lennartz; (2) that the district court erred in giving, over Lennartz's objection, a conscious avoidance instruction; and (3) that there was insufficient evidence to prove that the mailings alleged in the mail fraud counts were for the purpose of executing a scheme and artifice to defraud. We affirm the conviction.

## I. FACTUAL BACKGROUND

Lennartz began operating a commercial ambulatory service, known as Ambulatory Renal Services ("ARS"), in Indiana in 1982. With proper authorization from the Medicaid program, commercial ambulatory services provide transportation of Medicaid recipients to and from medically necessary appointments, and the ambulatory services then bill Medicaid for the cost of transportation. Medicaid, supported substantially by federal government funds, is administered in Indiana by the Indiana Department of Public Welfare and Blue Cross/Blue Shield of Indiana ("Blue Cross").

Blue Cross processes the Medicaid provider applications from the commercial ambulatory services. All accepted providers are sent a copy of the Provider Manual. The Provider Manual explains the compensation system for ambulatory services, which is as follows: reimbursement is figured according to (1) the base rate for transportation costs within the county in which the patient resides; (2) out-of-county mileage; (3) waiting time; and (4) for multiple patient transportation—full base rate, out-of-county mileage, and waiting time for the first patient, and only one half of the base rate for the second patient. To recover these transportation costs, the transportation services must first be authorized by the county welfare department in which the Medicaid recipient resides. The county welfare departments enroll Medicaid recipients and give prior authorization for certain transportation of Medicaid recipients. Prior authorization may be granted prospectively, such as one or two months in advance.

Lennartz applied to Blue Cross to enroll ARS as a Medicaid transportation provider. ARS satisfied the requirements and was enrolled as a Medicaid provider. Lennartz was sent a copy of the Provider Manual.

ARS transported primarily kidney dialysis patients. Most dialysis patients receive dialysis three times a week. Expert testimony at trial indicated that five hours is a reasonable amount of time for dialysis treatment; however, the normal dialysis time is between three and four hours, plus the time needed to begin and end the dialysis process.

Lennartz was the only employee of ARS, although he was not the only driver for ARS. Lennartz contracted with individuals who transported patients for ARS. Lennartz submitted the Medicaid claims for all drivers associated with ARS and in turn reimbursed those drivers. Most of Lennartz's business operations were conducted through the United States mail. These operations included submitting claim forms, obtaining prior authorization request forms and paying his drivers by check.

Lennartz instructed the drivers to notify him as to missed trips or changes in service but usually did not discuss computation of out-of-county mileage or waiting time. The drivers received mileage logs from Lennartz. These logs had blanks for starting

and ending mileage and time but did not have blanks for waiting time or out-of-county mileage. Lennartz asked the drivers to send him the logs every month or so, but failure to submit the logs did not prevent the driver from receiving payment from ARS.

On a patient's first trip with ARS, Lennartz normally drove the patient himself. In figuring the out-of-county mileage amounts for each patient, Lennartz relied on this initial transport of the patient. He did not make the effort to discover the actual out-of-county mileage traveled by his drivers in subsequent transports. Because of his system he routinely submitted the initial transport mileage figure, even if his drivers used different, shorter routes. For waiting times, Lennartz consistently submitted claims for five hours of waiting time.

In January 1987, the Indiana Department of Welfare requested that Blue Cross conduct an investigation of ARS. The initial Blue Cross investigation led to recommendation by Blue Cross that the case be referred to the Office of the Attorney General of Indiana. The Medicaid Fraud Unit of the attorney general's office commenced an investigation in late February 1987. The investigation included interviews of drivers, Medicaid recipients, county welfare workers, and hospital and dialysis center employees. Records from hospitals, dialysis centers, ARS and Blue Cross were examined. The investigators also conducted surveillance at dialysis centers, noting arrival and departure times, and checked the out-of-county mileage of transportation routes.

The investigation exposed improper charging by Lennartz in his Medicaid claims. The investigators discovered many instances where a patient remained in dialysis for four hours or less, yet Lennartz consistently billed Medicaid for five hours of waiting time. After checking the transportation routes, the investigators found that the out-of-county mileage charged by Lennartz was frequently higher than the mileage actually traveled. Occasionally patients missed appointments and, despite the

driver having reported the missed appointment to Lennartz, Lennartz would submit a claim to Medicaid. Lennartz also would submit claims for individual patients, when in fact the patients had been transported in group trip situations.

The indictment charged that Lennartz used the mails in furtherance of a scheme and artifice to defraud in which he would provide to county welfare officials false information regarding Medicaid recipients. Specifically, it charged he submitted to Blue Cross fraudulent claims which contained overstated mileage and waiting times, sought improper compensation for services not provided, and claimed reimbursement for individual trips in group transport situations.

The jury found Lennartz guilty on counts 1, 6, 7, 13, 16, and 17. The district court sentenced Lennartz to one year of imprisonment on count 1 and suspended imposition of any further sentence on the remaining counts. Lennartz was placed on probation for five years, to be consecutive to the one year's imprisonment.

The mailings involved in these counts were the paychecks mailed to drivers Randy Abbey and Charlene Nunn. The patient transported by Abbey often missed appointments, and Abbey reported these missed appointments to Lennartz. Lennartz, however, continued to file Medicaid claims and to pay Abbey despite there having been no actual transportation of the patient. Lennartz billed correct out-of-county mileage for Abbey's trips, yet until 1987 he billed for a waiting time of five hours when the waiting time generally was between three and one-half and four hours.

Nunn never received instructions from Lennartz about reporting waiting time nor was she instructed to record out-of-county mileage. When she first began transporting patients for ARS, she transported two patients separately. When circumstances changed, making it convenient to combine the trips, she did so. After having combined the trips for four months, she informed Lennartz of her change in practice. Nonetheless, she continued to receive the same compensation per patient. Lennartz

submitted individual transportation claims for these patients and disregarded the multiple transport regulation. Lennartz testified that for the times he improperly submitted individual claims, he did not know that the patients were being transported together. When a patient transported by Nunn was hospitalized for a time, Nunn left messages for Lennartz informing him of the hospitalization; however, Lennartz continued to submit claims for the patient's transportation. Lennartz billed the waiting time as five hours for each trip. He billed out-of-county mileage of forty-eight miles, while the investigation found the mileage to be thirty-two miles.

## II. ANALYSIS

### THE RULE 404(b) EVIDENCE

■ Lennartz contends that the district court's admission of testimony regarding prior uncharged misconduct attributed to him violated Federal Rule of Evidence 404(b). In reviewing the district court's evidentiary rulings, we are limited to determining whether the district court abused its discretion. *United States v. Whalen*, 940 F.2d 1027, 1032 (7th Cir.1991). As this court has noted, " '[a]ppellants who challenge evidentiary rulings of the district court are like rich men who wish to enter the Kingdom; their prospects compare with those of camels who wish to pass through the eye of a needle.' " *Id.* (quoting *United States v. Glecier*, 923 F.2d 496, 503 (7th Cir.1991)).

> Rule 404(b) provides,
> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Fed.R.Evid. 404(b). The admissibility of evidence under Rule 404(b) is determined by a four-part test. *United States v. Scop*, 940 F.2d 1004, 1009 (7th Cir.1991). Evidence of other crimes, wrongs, or acts may be admitted where:

(1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged, (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue, (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act, and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.

*Id.* at 1009 (quoting *United States v. Penson*, 896 F.2d 1087, 1091 (7th Cir.1990)).

Lennartz does not argue that the district court failed to utilize this analysis in determining the admissibility of the evidence. He even concedes that because mail fraud is a specific intent crime, if the Rule 404(b) evidence meets the four-part test it is admissible to show intent to defraud. *See United States v. Draiman*, 784 F.2d 248, 254 (7th Cir.1986). What Lennartz does contend is that the government misled the district court by arguing that the evidence was admissible to prove Lennartz's knowledge of Medicaid regulations. According to Lennartz, this evidence was improperly admitted since knowledge of the regulations and intent to knowingly defraud are distinct concepts. We do not agree.

The government presented evidence to show that Lennartz's fraudulent activities included claims to Medicaid overstating mileage and waiting times, claims for services not provided, and claims for individual trips where groups were transported. The government's use of the Rule 404(b) evidence to demonstrate Lennartz's knowledge of the Medicaid regulations, in conjunction with the evidence of his failure to follow those regulations, certainly contributed to the government's proof of intent. Knowledge of the Medicaid regulations and intent to defraud Medicaid are not completely independent, as Lennartz suggests.

The Rule 404(b) evidence to which Lennartz objected at trial, and again in this appeal, consists of the testimony of four government witnesses—David Lester, Penny Milliken–Horton, Kirby Crawley and Martin Elmore. Prior to the testimony by

each of these witnesses, the district court gave a limiting instruction. The limiting instruction given before Milliken–Horton's testimony stated the following:

> The next witness to be called by the government will not be testifying about events that are charged in the indictment. She will be testifying about other events. You may consider the evidence that the next witness will be giving only on the question of Mr. Lennartz' alleged intent to defraud Medicaid and his alleged knowledge of Medicaid regulations. You may not consider it for any other purpose.

Trial Transcript at 789. A similar instruction was given before the testimony of each of the other three Rule 404(b) witnesses. The district court included an extra warning in the limiting instruction given before Crawley's testimony and a similar warning before the testimony of Elmore, which added,

> I want to be sure that you understand when I tell you that this evidence is being admitted only for the limited purpose of the government's attempt to prove Mr. Lennartz' alleged intent to defraud and alleged knowledge of Medicaid regulations, knowledge of Medicaid regulations is not an element of these offenses.

Transcript at 963–64.

In 1982, David Lester, in his capacity as auditor in Program Integrity in the Medicaid Division of the Department of Public Welfare, audited a transportation company known as Pro Med. Lennartz was a driver for and vice president of Pro Med. After having conducted the audit, Lester presented the results of the audit to officials of Pro Med. Lennartz was present at the meeting. Lester testified that at this meeting he advised that transportation providers can only bill Medicaid for out-of-county mileage.

The testimony did not allege any improper acts by Lennartz but, as the government maintains, was tendered only to show that Lennartz had been informed as to how mileage is to be correctly claimed under Medicaid. Because the testimony did not

involve a crime, wrong or act by Lennartz (as Rule 404(b) covers), a proper analysis of this evidence can be made under Federal Rule of Evidence 403. Rule 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice...." Fed.R.Evid. 403. As noted in *United States v. Scop,* "[w]e accord a trial judge's assessment of relative probative value and unfair prejudice 'great deference because of his [or her] first-hand exposure to the evidence and \* \* \* familiarity with the course of the trial proceeding.'" *Scop,* 940 F.2d at 1009 (quoting *United States v. Briscoe,* 896 F.2d 1476, 1498 (7th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 173, 112 L.Ed.2d 137 (1990)). This evidence did not attribute to Lennartz responsibility for the actions necessitating the Pro Med audit, and thus there was little chance for unfair prejudice due to this testimony. The district court did not abuse its discretion in admitting this evidence.

The testimony of Penny Milliken–Horton and Kirby Crawley concerned Lennartz's activities while he was director of Seasons of the Heart nursing home. Milliken–Horton served as activity director. Milliken–Horton had transported patients to medical appointments while employed by the Seasons of the Heart and then received reimbursement from the nursing home. When Lennartz became director of Seasons of the Heart, Milliken–Horton continued to transport patients while on company time. With Lennartz as director, Lennartz, through ARS, offered to pay Milliken–Horton $50 per trip for out-of-county transportation. Milliken–Horton also received mileage reimbursement from the nursing home as she had before Lennartz's arrival.

In 1986, Kirby Crawley, an investigator with Medicaid Fraud Control, interviewed Lennartz regarding Milliken–Horton's trips. In discussing the matter with Crawley, and again at trial, Lennartz stated that he considered Milliken–Horton to be an ARS employee when she transported the patients. No charges were filed against Lennartz or Seasons of the Heart based on Milliken–Horton's activities; however,

while he denied any wrongdoing, Lennartz did admit to billing Medicaid for $5,408.50 in trips by Milliken–Horton and offered to refund that money.

Lennartz contends that the testimony of Milliken–Horton and Crawley was not presented for the purpose of proving Lennartz's intent to defraud Medicaid, but that the 404(b) evidence was addressed to the improper purpose of revealing Lennartz's supposed propensity to commit the crime charged. He also asserts that because the evidence was admitted for this improper purpose, its probative value could not have outweighed the danger of unfair prejudice.

The government maintains, and we agree, that this evidence was tendered to show specific intent under mail fraud, not his propensity to commit the crime charged, because this evidence showed that Lennartz had knowledge of proper and improper Medicaid billing practices. Thus this satisfies the first element of the 404(b) analysis. The transportation involving Milliken–Horton and Crawley's investigation occurred in 1986—the same year as the offenses charged in the indictment—and Lennartz's conduct involved defrauding Medicaid. This satisfies the second element of the analysis because the other act is similar enough and close enough in time to be relevant to the matter in issue. The government presented sufficient evidence of Lennartz's dealings with Milliken–Horton, as the third element requires. Finally, given our deference to the district court on the weighing of probative value and danger of unfair prejudice, we accept the district court's determination on the fourth element. The district court did not err in admitting this evidence.

The testimony by Martin Elmore pertained to his January 1985 interview with Lennartz. As a Medicaid investigator for the Indiana Department of Public Welfare, Elmore interviewed Lennartz about a billing by Lennartz for a service not performed. The main error involved billing for out-of-county mileage. Lennartz explained to Elmore that the error resulted from his wife's mistaken billing from a prior authorization. Elmore informed Lennartz that he had to document out-of-county mileage—that his records needed to contain more than the starting and ending mileage for each trip.

Elmore's testimony was relevant because Lennartz continued to bill Medicaid without documenting the out-of-county mileage. Lennartz had no record of transportation by his drivers actually taking place nor any logs submitted by drivers showing out-of-county mileage or waiting time. The logs were not even used by Lennartz in his billing.

As with the testimony of the other 404(b) witnesses, Elmore's testimony was tendered to show the specific intent required for a mail fraud conviction by exhibiting Lennartz's knowledge of the Medicaid regulations. The subject of Elmore's testimony was similar enough and close enough in time to be relevant to the matter in issue; the evidence of the activity was sufficient; and there is no reason to disagree with the district court's assessment of probative value and danger of unfair prejudice.

The knowledge or lack of knowledge of Medicaid regulations was relevant to the government's efforts to prove Lennartz's intent to defraud, because by knowing the regulations and clearly not following them, Lennartz exhibited signs of intent to defraud. This reasoning, the four-part analysis of the evidence presented by the government, and the district court's limiting instructions before the testimony of the witnesses, convince us that there was no abuse of discretion by the district court in admitting the Rule 404(b) evidence.

THE CONSCIOUS AVOIDANCE INSTRUCTION

■ Lennartz argues that the district court erred in giving, over his objection, the following conscious avoidance instruction to the jury:

When the word "knowingly" is used in these instructions, it means that the defendant realized what he was doing and was aware of the nature of the conduct and did not act through ignorance, mistake, or accident. Knowledge may be proved by the defendant's conduct and by all the facts and circumstances sur-

rounding the case. Knowledge may be inferred from a combination of suspicion and indifference to the truth. If a person is found to have had a strong suspicion that things were not what they seemed or that someone had withheld some important facts yet shut his eyes for fear of what he would learn, that person may be inferred to have acted knowingly or with knowledge, as I have used these terms.

Before giving this instruction, the district court instructed the jury that the government had to prove that Lennartz knowingly devised the scheme to defraud, that he used the United States mails for the purpose of carrying out the scheme, and that he did so knowingly and with the intent to defraud.

The conscious avoidance or "ostrich" instruction should be given " 'only when it addresses an issue reasonably raised by the evidence.' " *United States v. Nazon*, 940 F.2d 255, 259 (7th Cir.1991) (quoting *United States v. Diaz*, 864 F.2d 544, 549 (7th Cir.1988)). As *Nazon* further explains, "a conscious avoidance instruction is appropriate when a defendant 'claims a lack of guilty knowledge' and where 'there are facts and evidence which support an inference of deliberate ignorance.' " *Id.* (quoting *United States v. Talkington*, 875 F.2d 591, 596 (7th Cir.1989)). In ruling on the district court's decision to give a conscious avoidance instruction, this court " 'must review the evidence and any reasonable inferences that can be drawn from the evidence in the light most favorable to the government.' " *Id.* (quoting *United States v. Bigelow*, 914 F.2d 966, 970 (7th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 1077, 112 L.Ed.2d 1182 (1991)).

The district court decided to give the "ostrich" instruction because Lennartz was denying guilty knowledge and there were facts in evidence to support a contrary inference. The government argues that this is a correct assessment and submits that this instruction was proper. Lennartz denied knowingly submitting false claims to Medicaid; yet, the evidence indicates that he deliberately ignored basic facts.

Lennartz made the first trip with a new patient, then he used that out-of-county mileage for all subsequent billing on that patient. He basically closed his eyes to whether the driver's routes caused any change in the out-of-county mileage. Similarly, in billing for waiting times he consistently billed for five hours. He claimed that billing for five hours was an industry practice, but the only evidence of an industry standard was testimony from a doctor who treated dialysis patients that five hours could be a reasonable waiting time. Lennartz even billed for appointments that the patients missed. The forms he gave to his drivers contained no space for recording waiting times and asked for total mileage, not the separate out-of-county mileage. Lennartz testified that he never read the portion of the authorization forms that explains that reimbursement is limited to payment of Medicaid allowable charges rather than estimated fees. The evidence indicates that Lennartz billed what he wanted to bill.

Deliberate ignorance exists when the evidence indicates that "the defendant, knowing or suspecting that he is involved in shady dealings, takes steps to make sure that he does not acquire full or exact knowledge of the nature and extent of those dealings." *United States v. Giovannetti*, 919 F.2d 1223, 1228 (7th Cir.1990). The above evidence demonstrates that Lennartz deliberately failed to take steps to assure that his bills were accurate, despite knowledge that patients had missed appointments and despite reports that his drivers were performing group transport. Moreover, Lennartz ignored the obvious fact that out-of-county travel distances and waiting times for dialyses vary depending on the driver's route and the patient, respectively.

Lennartz claims that he lacks guilty knowledge. He argues that he took great effort to know what his drivers were doing. We question, however, how one can make such noble efforts to know what is occurring, ignore the facts learned from being so aware, and still claim lack of guilty knowledge. Our review of the evidence supports

an inference of deliberate ignorance. The district court's decision to give the conscious avoidance instruction to the jury was proper.

THE SUFFICIENCY OF THE EVIDENCE

■ Lennartz's final claim is that the evidence was insufficient to establish that the checks mailed to drivers Nunn and Abbey were for the purpose of executing a scheme or artifice to defraud. In presenting the frequently used, sufficiency of the evidence argument, the defendant bears a heavy burden. We review sufficiency of the evidence claims deferentially, considering the evidence and all reasonable inferences in the light most favorable to the government. *United States v. Motley*, 940 F.2d 1079, 1084 (7th Cir.1991). We will reverse a conviction "only if we find that a reasonable fact-finder could not have found the essential elements of the offense beyond a reasonable doubt." *United States v. Bennett*, 908 F.2d 189, 196 (7th Cir.), cert. denied, — U.S. —, 111 S.Ct. 534, 112 L.Ed.2d 544 (1990).

■ To convict a defendant of mail fraud, the government must prove that the defendant participated in a scheme to defraud and caused the mails to be used in furtherance of that scheme. *United States v. Bonansinga*, 773 F.2d 166, 168 (7th Cir.1985), *cert. denied*, 476 U.S. 1160, 106 S.Ct. 2281, 90 L.Ed.2d 723 (1986). In *United States v. Draiman*, this court explained that the mail fraud statute is to be read expansively. *Draiman*, 784 F.2d at 251. *See also United States v. Anderson*, 809 F.2d 1281, 1288 (7th Cir.1987). Of particular importance to this case, "[t]he 'in furtherance' component of mail fraud is likewise to be broadly read and applied. If the mailing is 'incident to an essential part of the scheme' the statute is satisfied." *Draiman*, 784 F.2d at 251 (quoting *United States v. Lea*, 618 F.2d 426, 430 (7th Cir. 1980)). The mailing itself need not be an essential part of the scheme, but it must be "incident to an essential part." *Id.*

■ The evidence showed that Lennartz conducted a scheme to defraud Medicaid by overcharging for waiting times and out-of-county mileage, billing for trips not made,

and billing for individual trips when multiple transports actually were involved. A number of the fraudulent claims submitted by Lennartz involved Medicaid patients transported by Nunn and Abbey.

The mailings of interest to the furtherance of this scheme to defraud were the paychecks mailed to drivers Nunn and Abbey. These paychecks were an integral part of Lennartz's scheme. The transportation of Medicaid patients was the source of Lennartz's fraudulent charges to Medicaid. Unable himself to transport all of the patients for whom he submitted claims, Lennartz relied on his drivers. In turn, his drivers relied on their paychecks. The mailing of the paychecks allowed Lennartz to continue in his fraudulent scheme. Given the broad reading of the mail fraud statute, and our deferential review of a sufficiency of the evidence claim, we find that Lennartz's sufficiency of the evidence argument must fail.

## III. CONCLUSION

For the reasons set forth above, the convictions of Lennartz on counts 1, 6, 7, 13, 16, and 17 of the indictment are

AFFIRMED.