**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Julio Javier SORIA, Defendant–
Appellant.**

**No. 90–2692.**

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 10, 1992.

Decided June 11, 1992.

As Amended June 11, and June 19, 1992.

As Amended on Denial of Rehearing
Sept. 14, 1992.

---

James L. Santelle, Chris R. Larsen (argued), Asst. U.S. Attys., Milwaukee, Wis., for plaintiff-appellee.

Andrew M. John (argued), Mandell & Ginsberg, Madison, Wis., for defendant-appellant.

Before KANNE, Circuit Judge, WOOD, Jr., Senior Circuit Judge, and SHARP, Chief District Judge.*

* The Honorable Allen Sharp, Chief District Judge for the Northern District of Indiana, is sitting by designation.

KANNE, Circuit Judge.

Thomas "Slim" Johnson agreed to cooperate with the police after he was indicted on various drug and tax related offenses. Consistent with the agreement, Johnson pursued a relationship with Julio Soria, who was being investigated for drug activity. Soria introduced Johnson to Sharon Bogan, and Johnson subsequently made several deliveries of cocaine in two- to three-ounce packages to Bogan for Soria. Prior to one of those deliveries, Johnson observed Soria retrieve approximately two ounces of cocaine from his home.

The police searched Bogan's home pursuant to a search warrant and recovered cocaine, drug-related paraphernalia, a handgun and approximately $3,000. Bogan agreed to cooperate with the police, and attempted to contact Soria to purchase cocaine. Although she was unable to reach Soria directly, she contacted Johnson's wife, who in turn contacted Soria to request "two" for Bogan. Soria instructed Mrs. Johnson to deliver a package to Bogan that he would leave in her mailbox. Mrs. Johnson was stopped by the police when she delivered the package to Bogan, and she admitted to receiving the cocaine from Soria.

Based on information that Soria was interested in purchasing a Corvette, Johnson and an undercover police officer met with Soria to discuss the purchase of a white Corvette from the officer. Soria offered $2500 and approximately 10 ounces of cocaine to the officer in exchange for the car. The officer had previously told Soria that he was involved in the sale and distribution of cocaine. The transaction did not take place, however, because Soria became suspicious about the officer's actual identity.

Around that time, Soria told Johnson that he planned to obtain one-half kilogram of cocaine from a man in Chicago in exchange for his automobile. That deal was never consummated. The police subsequently recorded and observed a transaction in which Johnson paid Soria $1,600, in marked bills, which he purportedly owed Soria from a previous drug deal. Johnson told the police about several drug transactions in which Soria was involved, including purchases of large quantities of cocaine from men from Chicago and Miami (totalling seven kilograms) and several smaller deliveries to Sharon Bogan's brother, and stated that on one occasion he observed Soria carrying a handgun. He also told the police that Soria kept the proceeds of his drug transactions in a yellow purse.

The police searched Soria's home pursuant to a search warrant. Approximately $14,000 was recovered from the home, and some of the bills were marked. The majority of the money was found in a yellow purse. A revolver was found in a dresser drawer in the bedroom in which Soria was found at the time of the search. Soria admitted to the police that the money and the gun belonged to him. He also stated that Johnson was his source for cocaine.

Soria was charged in a superseding indictment with conspiracy to possess with the intent to distribute cocaine and possession with the intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846 and 18 U.S.C. § 2, and with possessing a firearm as a convicted felon and using or carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. §§ 922(g) and 924(c). Soria filed several pre-trial motions, including motions to suppress statements he made to the police and the evidence seized during the search of his home, to exclude evidence of the nature of his prior felony conviction, and to sever the firearms counts from the other counts. The district court denied the motions.

A jury convicted Soria of the first three offenses, but found him not guilty of the fourth. He was sentenced to two terms of 240 months of imprisonment and one term of 120 months of imprisonment for the crimes, which were to be served concurrently. The district court denied Soria's motions for acquittal and for a new trial. He appeals and we affirm.

I.

■ Soria argues that the district court erred in refusing to suppress the evidence

obtained from the search of his home because the executing officers failed to knock and announce their authority and purpose before entering. We review the denial of a motion to suppress under a clearly erroneous standard. *United States v. Somers,* 950 F.2d 1279, 1283 (7th Cir.1991); *United States v. Barnes,* 909 F.2d 1059, 1067 (7th Cir.1990). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* at 1067 (citation omitted). We will accept the district court's findings of fact and determinations of credibility unless we are left with the definite and firm conviction that a mistake has been committed. *Somers,* 950 F.2d at 1284.

■ "[F]ederal standards control the admissibility of evidence in a federal prosecution even though the evidence was seized [during the execution of a search warrant] by state officials...." *United States v. Singer,* 943 F.2d 758, 761 (7th Cir.1991). "[E]vidence seized by state law enforcement officers is admissible in a federal criminal proceeding if it is obtained in a manner consistent with the protections afforded by the United States Constitution and federal law." *Id.; United States v. D'Antoni,* 874 F.2d 1214, 1218 (7th Cir. 1989); *United States v. Mealy,* 851 F.2d 890, 907 (7th Cir.1988).[1] The fourth amendment, through the fourteenth amendment, demands that state officials act reasonably in conducting searches. *Singer,* 943 F.2d at 761; *United States v. Andrus,* 775 F.2d 825, 844 (7th Cir.1985) (citing *Ker v. California,* 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963)).

■ Pursuant to 18 U.S.C. § 3109, a federal law enforcement officer is authorized to forcefully enter a private residence "to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant." An officer's failure

to knock and announce his presence before entering will be excused if exigent circumstances exist to justify such an entry. *Singer,* 943 F.2d at 762. "[I]t is generally left to the discretion of the executing officers to determine the details of how best to proceed with the performance of a search authorized by warrant—subject of course to the general fourth amendment protection 'against unreasonable searches and seizures.'" *Id.* at 761 (quoting *Dalia v. United States,* 441 U.S. 238, 257, 99 S.Ct. 1682, 1693, 60 L.Ed.2d 177 (1979)).

■ Soria's home is a single family house with an unattached garage. The front door leads directly into the living room, and a side-rear door leads into a vestibule between the outside and the kitchen. There is a vestibule door which leads into the kitchen. Two bedrooms are located on the first floor and additional bedrooms are located upstairs. At the time of the search, approximately 6:00 p.m., the curtains in the front bay window were drawn. The executing officers observed movement in the living room through the curtains and noted that a television was turned on in that room. Soria, Enid Baez and her two children were in the home.

After several police officers surrounded the home, a plain-clothes officer knocked on the side door but there was no response. Fifteen to twenty seconds passed before the officer knocked a second time, and again there was no response. There was also no response when the officer knocked a third time fifteen to thirty seconds later. Another officer was then ordered to forcibly push the door open with a sledgehammer. After that door and the inside vestibule door were opened, several officers entered the home through the kitchen while shouting loudly, "Police officers, search warrant!"

Detective James Cesar, who was in charge of the search, testified that the plain-clothes officer knocked on the side door of Soria's home in order to have it opened through a ruse. He stated that the

---

1. Soria does not contest the state judge's authorization of the search warrant. *See Singer,* 943 F.2d at 761.

officer was to have presented himself as a salesman to gain peaceable entry and to ensure the safety of the officers. *See United States v. De Feis*, 530 F.2d 14, 15 (5th Cir.) (entry by ruse or deception not violative of § 3109), *cert. denied*, 429 U.S. 830, 97 S.Ct. 92, 50 L.Ed.2d 95 (1976); *United States v. Raines*, 536 F.2d 796, 799–800 (8th Cir.) (same), *cert. denied*, 429 U.S. 925, 97 S.Ct. 327, 50 L.Ed.2d 293 (1976).

Soria concedes that had the warrant been executed as Detective Cesar had planned the entry would have been legal, but argues that no one heard the knocking on the side door. He claims that he was watching television in a first floor bedroom and did not hear the knocking. Ms. Baez testified that she was in the living room at that time with her younger daughter, and that she did not hear the knocking. She stated that she heard the noises made by the sledgehammer, but thought that her older child, who was in the basement, had made the noises.[2]

Soria argues that the police should have known that no one inside the house would have heard the knocking on the side door, considering that they had observed movement only in the living room. He notes that the officer's second and third knocks on the side door were no louder than the first, and that no attempt was made to knock on the front door.

In denying Soria's motion to suppress, the district court noted that while the proper procedure in executing a search warrant is "to loudly announce identity, purpose and authority while knocking on the door," it could not find that the search violated Soria's fourth amendment rights. We agree. The officers' duty was only to act reasonably in executing the warrant. *See Singer*, 943 F.2d at 761. They announced their authority and purpose contemporaneously with their forcible entry into Soria's home, which occurred only after there was no response to three intervals of normal knocking over the period of one minute. Although Detective Cesar testified that there were no exigent circumstances, he had information that Soria was the type of person that might be violent. Detective Cesar also stated that a ruse was used to enter Soria's home in order to gain peaceable entry and to ensure the safety of the officers. Strict compliance with the knock-and-announce rule may be excused where there is reason to believe that the executing officers would be in danger if a more reasonable entry was made. *See Singer*, 943 F.2d at 762 (citing *Ker*, 374 U.S. at 47, 83 S.Ct. at 1636 (Brennan, J., dissenting)); *United States v. Nolan*, 718 F.2d 589, 596 (3rd Cir.1983) ("[A] police officer's reasonable belief that announcement might place him or his associates in physical peril would excuse compliance with [§ 3109].").

Because the search did not violate federal constitutional standards, the evidence seized from Soria's home during the search should not have been suppressed. Accordingly, Soria's argument that his statements to the police after the search were inadmissible as the fruit of the illegal entry has no merit.[3]

## II.

Soria contends that the district court erred in refusing to grant him a new trial because several witnesses' statements

---

**2.** Soria acknowledges that the older child told him that she had heard someone "hitting" the side door, and that the magistrate found that "hitting" meant "knocking." Soria contends, however, that Ms. Baez's testimony indicates that the child did not come up from the basement until after the door was hit with the sledgehammer.

**3.** The government's suggestion that the admission of the money and handgun seized from Soria's home and his statements to the police were harmless error has some merit. There was substantial evidence aside from the evidence which Soria argues should have been suppressed that supported his drug trafficking activities upon which the jury could have relied on in convicting him, i.e., Johnson's testimony about several large quantity drug transactions in which Soria was involved and about Soria's possession of a handgun during a cocaine delivery. *See Ferrier v. Duckworth*, 902 F.2d 545, 548 (7th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 526, 112 L.Ed.2d 536 (1990); Fed.R.Crim.P. 52(a).

were improperly admitted at trial. The decision to grant a new trial is a matter within the discretion of the district court and will be disturbed on appeal only if the district court abused that discretion. *United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir.1989). Similarly, in reviewing the district court's evidentiary rulings, we are limited to determining whether the district court abused its discretion. *United States v. Lennartz*, 948 F.2d 363, 366 (7th Cir. 1991).

### A.

■ Upon redirect examination, the police officer to whom Soria had offered money and cocaine in exchange for a Corvette testified that he had prior knowledge that Soria was "a high level drug dealer who dealt large quantities of cocaine." The officer was asked why he told Soria that he sold cocaine and not marijuana. Soria objected on the basis that the statement was hearsay, irrelevant and speculative.

Soria's objection was properly overruled by the district court. The officer's statement was not offered to prove the truth of the assertion that Soria was a high level drug dealer and therefore did not constitute inadmissible hearsay under Federal Rule of Evidence 801(c). The statement was relevant to respond to Soria's cross-examination of the officer as to whether he had "trapped" Soria into offering him cocaine instead of marijuana.

### B.

■ Johnson testified that he knew that Soria was involved in drugs through "street talk." The district court sustained Soria's hearsay objection, and noted that it would instruct the jury to disregard the statement. Soria argues the district court never gave such an instruction. The district judge's statement that "I will instruct them to disregard the portion of the last response" was made while the jury was present. It can be inferred that the instruction was directed toward the jurors. Soria failed to make an additional objection at that time. *See Greer v. Miller*, 483 U.S. 756, 766 n. 8, 107 S.Ct. 3102, 3109 n. 8, 97 L.Ed.2d 618 (1987). Because he did not do so, we review only for plain error, and we find no plain error. Fed.R.Crim.P. 52(b).

### C.

■ At trial, Detective Cesar testified that Soria was taking a gold chain off from around his neck when the police entered the bedroom in which he was found at the time of the search. He further stated that he believed that Soria was going toward the dresser to drop the chain and to get a handgun from a dresser drawer. Soria's objection that the statement was speculation was sustained, and the district court instructed the jury to disregard the statement. Soria contends that the instruction was insufficient to overcome the prejudicial impact of the statement.

It is presumed that the jury will follow an instruction to disregard inadmissible evidence unless there is an "overwhelming probability" that the jury will be unable to follow the court's instructions and a strong likelihood that the effect of the evidence would be "devastating" to the defendant. *Greer*, 483 U.S. at 766 n. 8, 107 S.Ct. at 3109 n. 8. We have no reason to believe that either situation is present here.

Soria concedes that defense counsel may have opened the door to such questioning by asking Detective Cesar on cross-examination to describe Soria's actions, but argues that Detective Cesar's answer was inadmissible because it was speculative. Even if the statement was speculative, the court's instruction was sufficient to overcome any prejudice.

### D.

■ Soria also takes issue with an officer's statements that Soria had told him that he was a convicted criminal, that he had "served some time," and that he was not supposed to possess a firearm. We review a district court's decision to admit evidence of a defendant's prior crimes for an abuse of discretion. *United States v. Chaimson*, 760 F.2d 798, 808 (7th Cir.1985). In determining whether evidence of a defendant's other crimes, wrongs, or acts is

admissible we apply a four-part test. *Lennartz*, 948 F.2d at 366. That evidence may be admitted where:

> (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged, (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue, (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act, and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.

*Id.* (quoting *United States v. Scop*, 940 F.2d 1004, 1009 (7th Cir.1991)).

■ Soria's admissions clearly meet this test. In fact, he acknowledges that his statements to the officer were relevant to the felon in possession of a weapon charge, 18 U.S.C. § 922(g).[4] However, he argues that the evidence was not admissible with respect to the remaining charges.

■ As the district court noted in denying Soria's pre-trial motions, any prejudice could be cured by an instruction that the jury only consider the prior conviction as evidence on the firearms count. *See United States v. Jones*, 880 F.2d 55, 58 (8th Cir.1989). Soria submitted a proposed limiting instruction, but it was not given. On appeal, Soria argues only that he was prejudiced by the officer's statement. He fails to allege that the district court erred in failing to give a limiting instruction or whether he objected at trial. Therefore, the argument was waived. Fed.R.Crim.P. 30; *United States v. Brothers*, 955 F.2d 493, 496 (7th Cir.1992). Additionally, we find that there was no plain error. *See* Fed.R.Crim.P. 52(b); *Brothers*, 955 F.2d at 496.

## E.

■ Soria maintains that the district court erred in allowing the admission of his offer to a police officer to trade money and ten ounces of cocaine for a Corvette under Federal Rule of Evidence 404(b). Rule 404(b) generally excludes evidence of a defendant's prior bad acts to prove that because the person committed the prior bad act, he likely committed the act at issue. *United States v. Sophie*, 900 F.2d 1064, 1074 (7th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 124, 112 L.Ed.2d 92 (1990).

The government offered the evidence of Soria's offer on the basis that it directly related to the conspiracy charge—i.e., the offer established Soria's knowledge and ability to obtain a large amount of cocaine in furtherance of the conspiracy. *See Sophie*, 900 F.2d at 1076 (Rule 404(b) does not apply where testimony is directly related to the charged offense); *United States v. Hawkins*, 823 F.2d 1020, 1023 (7th Cir. 1987) (same); *Chaimson*, 760 F.2d at 805 (where specific intent is an element of the crime charged, evidence of other acts may be introduced to establish that intent).

Soria acknowledges that the offer took place within the relevant time frame, but argues that it is outside the scope of the conspiracy charge and was therefore another bad act. We disagree. Soria's offer to trade cocaine and money for the Corvette occurred during the course of the conspiracy, and as part of Soria's participation in the conspiracy. It was not an "other act" within Rule 404(b). *See Sophie*, 900 F.2d at 1076.

Even if the offer was not within the conspiracy, application of the four-part test indicates that the evidence was properly admitted: the evidence establishes Soria's knowledge and ability to obtain a large amount of cocaine; Soria admits that the offer to deal in cocaine occurred during the alleged conspiracy; and the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice—whether the deal was consummated is irrelevant. The district court did not abuse its discretion in admitting the evidence, and in denying Soria's motion for a new trial.

---

**4.** Soria's reliance on Rule 609(a) of the Federal Rules of Evidence is misplaced. Rule 609(a) does not apply to or limit the admission of a defendant's prior conviction when it is relevant to an issue in the case, i.e., an essential element of a charged offense.

### III.

 Soria maintains that the district court improperly relied upon Johnson's testimony in sentencing him. At trial, Johnson testified that in January 1990 Soria obtained one kilogram from a man named "Carlos" in Chicago, that he received another kilogram from "Carlos" at a hotel in Milwaukee, and that he obtained a third kilogram from "Carlos" at his home. Johnson testified that within a few days Soria received four kilograms from three men from Miami at his home. Johnson also testified about several other deliveries and sales of smaller amounts of cocaine by Soria. The presentence investigation report calculated the amount of cocaine that Soria had possessed during the relevant time period to be in excess of seven kilograms.

Soria argues that the district court erred in relying upon Johnson's testimony because it is unreliable and uncorroborated. He notes that Johnson testified as a part of his plea agreement, that Johnson admitted to lying at his own sentencing shortly before Soria's trial, and that Johnson's testimony at trial regarding the men from Miami differed significantly from what he had told the police three months prior.

Section 6A1.3(a) of the Sentencing Guidelines provides that a court may consider any information for sentencing purposes "provided that the information has sufficient indicia of reliability to support its probable accuracy." *United States v. Smith*, 938 F.2d 69, 70 (7th Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 254, 116 L.Ed.2d 208 (1991). We will uphold a sentence pursuant to the guidelines if the guidelines were properly applied to factual conclusions that are not clearly erroneous. *United States v. Baldwin*, 956 F.2d 643, 646 (7th Cir.1992). We review for clear error a district court's determination of the quantity of drugs involved in an offense. *Id.*

In objecting to Johnson's reliability at sentencing, Soria asserted that Johnson's uncorroborated testimony about Soria's involvement in large-quantity drug transactions should not have been relied upon because the jury did not make any finding with regard to the amount of cocaine Soria possessed in convicting him of conspiracy. The quantity of drugs is not an element of that offense; therefore, it is not an issue for jury determination. *United States v. Levy*, 955 F.2d 1098, 1106 (7th Cir.1992). "[F]acts germane only to sentencing are resolved by the judge not the jury." *Id.* (quoting *United States v. Smith*, 938 F.2d at 70). Moreover, the information that Johnson gave the police was not totally uncorroborated—a yellow purse containing several thousand dollars was recovered from Soria's home. The district court properly relied upon Johnson's testimony in sentencing Soria.

The judgment of the district court and its sentencing of Soria are AFFIRMED.