**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Camilo TESTA, et al., Defendants–
Appellants.**

**Nos. 92–2037, 92–2049 and 92–2526.**

United States Court of Appeals,
Seventh Circuit.

Argued May 10, 1994.

Decided Aug. 17, 1994.

Daniel C. Murray, Asst. U.S. Atty., John Collins (argued), Office of U.S. Atty., Crim. Div., Chicago, IL, for U.S. in No. 92–2037.

Barry R. Elden, Asst. U.S. Atty., John Collins (argued), Office of U.S. Atty., Crim. Receiving, Appellate Div., Chicago, IL, for U.S. in No. 92–2249 and 92–2526.

David W. Gleicher, Chicago, IL, for Camilo Testa.

Elliott T. Price, Chicago, IL (argued), for Rudy Martinez.

Anita Rivkin–Carothers, Chicago, IL (argued), for Jose Paz.

Before COFFEY, MESKILL,* and RIPPLE, Circuit Judges.

MESKILL, Circuit Judge.

In these joint criminal appeals, the defendants-appellants, Camilo Testa, Rudy Martinez and Jose Paz, challenge their judgments of conviction, entered in the United States District Court for the Northern District of Illinois, Eastern Division, Shadur, *J.*, after a jury trial, on the grounds that (1) their conspiracy convictions were not supported by sufficient evidence, and (2) they were prejudiced by the admission into evidence of a certain statement exculpating a codefendant. In addition, Paz challenges his sentence. Finding none of these contentions persuasive, we affirm the judgments.

## BACKGROUND

The jury could reasonably have found the following facts from the evidence admitted at trial. Beginning some time in 1988, Testa, Martinez and Paz became involved in a cocaine distribution ring that was centered in Chicago and Minnesota. Martinez fronted cocaine to Cynthia Pluff in amounts ranging from about one to five kilograms per week. Pluff picked up the cocaine weekly in Chicago either from Martinez or from Testa, who worked for Martinez; on occasion, Testa delivered the cocaine to Martinez's residence while Pluff waited. After distributing the cocaine in Minnesota, Pluff paid Martinez, and they split the profits equally.

Paz supplied cocaine to Martinez and sometimes delivered cocaine to him while Pluff waited. Paz fronted the cocaine to Martinez, who paid Paz after Pluff had paid Martinez. When Pluff did not return promptly with the proceeds of the cocaine sales, Paz often became anxious for his money and insisted that Martinez call Pluff to tell her to pay more quickly. On many occasions, Martinez called Pluff or one of her associates to tell them of Paz's impatience.

Testa, who worked for Martinez, stored cocaine at his house, and either delivered it to Martinez when needed or Pluff picked up the cocaine from Testa's house. Testa also traveled to Minnesota on occasion to supply Pluff with additional cocaine, and he arranged for rental cars for Pluff's trips from Minnesota to Chicago. In addition, Testa helped to secure a "stash house" for the cocaine during the latter part of the conspiracy, and he sometimes took payment for the cocaine on behalf of Martinez.

Martinez, Paz and Testa were tried, along with three other codefendants, before a jury. The jury convicted Martinez of conspiracy to possess with intent to distribute and to distribute cocaine, in violation of 21 U.S.C. § 846; engaging in a continuing criminal enterprise, in violation of 21 U.S.C. § 848(a); two counts of distributing cocaine within one thousand feet of a school, in violation of 21 U.S.C. §§ 841(a)(1) and 860; three counts of using a telephone in the commission of a narcotics felony, in violation of 21 U.S.C. § 843(b); and engaging in interstate travel to facilitate the commission of a felony, in violation of 18 U.S.C. § 1952(a)(1) and (a)(3). The court sentenced him principally to life in

---

* Honorable Thomas J. Meskill, Senior Circuit Judge of the United States Court of Appeals for the Second Circuit, sitting by designation.

prison. The jury convicted Testa of conspiracy to possess and distribute cocaine, in violation of 21 U.S.C. § 846; distributing cocaine within one thousand feet of a school, in violation of 21 U.S.C. §§ 841(a)(1) and 860; and using a telephone in the commission of a narcotics felony, in violation of 21 U.S.C. § 843(b). The court sentenced him principally to 135 months imprisonment. The jury convicted Paz of conspiracy to possess and distribute cocaine, in violation of 21 U.S.C. § 846, and the court sentenced him principally to 192 months imprisonment.

## DISCUSSION

### I. *Sufficiency of Evidence*

The appellants first contend that the government adduced insufficient evidence of a single conspiracy, as was charged in the indictment, and established only that several distinct conspiracies had existed. The appellants thus assert that an impermissible variance existed between the indictment and the proof at trial. *See United States v. Maholias,* 985 F.2d 869, 874 (7th Cir.1993); *United States v. Townsend,* 924 F.2d 1385, 1389 (7th Cir.1991). Specifically, the appellants claim that the government failed to prove beyond a reasonable doubt that Paz had entered into a common agreement or had engaged in a concert of action with the other conspirators in the conspiracy to distribute cocaine in Minnesota, as alleged in the indictment. We are not persuaded.

■ To establish a conspiracy to possess with intent to distribute and to distribute cocaine under 21 U.S.C. § 846, the government must prove that two or more persons entered into an agreement to possess and distribute cocaine. Moreover, to obtain the conviction of a particular defendant charged with conspiracy, the government must prove that that defendant was a party to the established agreement. *See United States v. Collins,* 966 F.2d 1214, 1219 (7th Cir.1992); *United States v. Navarez,* 954 F.2d 1375, 1380 (7th Cir.1992). In determining whether a defendant was a party to the conspiracy at issue, this Court has considered the existence of mutual dependence or mutual support among the defendant and members of the

conspiracy as evidence suggesting that the defendant did, in fact, join the conspiracy. *See Townsend,* 924 F.2d at 1392.

■ A defendant asserting a variance claim will succeed in obtaining reversal of his conviction if he establishes that (1) the evidence was insufficient to support the jury's finding of a single conspiracy, and (2) he was prejudiced by the variance. *See Collins,* 966 F.2d at 1221; *Townsend,* 924 F.2d at 1390; *see also* Fed.R.Crim.P. 52(a). Although a variance claim is characterized as a challenge to the sufficiency of evidence supporting the defendant's conspiracy conviction, a showing of prejudice is nonetheless required to reverse a conviction on variance grounds because "[t]he crime of conspiracy focuses on agreements, not groups." *Townsend,* 924 F.2d at 1389. In order to convict the defendant of conspiracy, therefore, the government "need only prove that the defendant joined the agreement alleged," but need not establish the group of coconspirators with whom the defendant joined. *Id.*

■ Here, the evidence, viewed most favorably to the government, amply supported the jury's finding that Paz had entered into the conspiracy to possess cocaine with intent to distribute and to distribute cocaine in Minnesota. There was testimony that Paz had delivered cocaine to Martinez while Pluff, who distributed it in Minnesota, waited for him; that Paz did not receive payment for the cocaine he supplied to Martinez until after Pluff had sold it; that Paz had instructed Martinez on many occasions to call Pluff and Pluff's associates to tell them to accelerate the cocaine sales and to pay promptly for the fronted cocaine; and that Pluff had once received a two kilogram quantity of cocaine directly from Paz. Moreover, Pluff testified, with corroboration by one of her associates, that she had met Paz in Chicago and had asked him whether he had obtained additional cocaine for her, to which he replied that he had not, but that he was making some calls. Soon thereafter, two people arrived with cocaine. On the basis of this evidence, the jury could reasonably have concluded that Paz knew of the Minnesota cocaine connection and that his own success was tied to the success of that endeavor. The evidence thus

formed an adequate basis for the jury's finding that Paz had joined the conspiracy to possess cocaine and to distribute it in Minnesota.

■ In a related claim, Paz contends that the government introduced insufficient evidence of his participation in the conspiracy. Specifically, Paz asserts, citing *United States v. Martinez de Ortiz,* 907 F.2d 629, 632 (7th Cir.1990) (en banc), *cert. denied,* 498 U.S. 1029, 111 S.Ct. 684, 112 L.Ed.2d 676 (1991), that all of the evidence of his participation derived from out of court statements of coconspirators and that such statements cannot alone support a conspiracy conviction.

In *Martinez de Ortiz,* this Court expressly reserved decision on whether a conspiracy conviction might be upheld if the only evidence of the defendant's participation in the conspiracy derives from coconspirators' out of court statements. *Id.* Although such statements are generally admissible, *see* Fed. R.Evid. 801(d)(2)(E); *Maholias,* 985 F.2d at 877–78, they might not have sufficient indicia of reliability to form the sole basis of a conviction. In this case, we need not resolve the question left open in *Martinez de Ortiz,* however, because, despite Paz's claims to the contrary, the evidence supporting his conspiracy conviction did not consist solely of coconspirators' out of court statements.

For example, Pluff herself testified at trial that, on at least five occasions, she had seen Paz deliver cocaine to Martinez for distribution by Pluff in Minnesota. Pluff also testified that, on at least ten occasions, she had observed Martinez pay Paz for the cocaine after she had paid Martinez. Additionally, Pluff testified that she had interacted directly with Paz on at least two occasions, on one of which he had supplied her with two kilograms of cocaine. Moreover, Drug Enforcement Administration agents testified that they had observed Paz going to and leaving Martinez's apartment on January 7, 1991. Thus, the evidence of coconspirators' out of court statements, and particularly the testimony about Martinez's phone calls to Pluff and others telling them that Paz was becoming anxious about getting his money, merely supplemented the eyewitness testimony about Paz's participation in the conspiracy.

Accordingly, we conclude that the government adduced sufficient evidence of Paz's participation and joinder in a single conspiracy to distribute cocaine in Minnesota to support the conspiracy convictions.

## II. *Admission of Statement Into Evidence*

Testa, Martinez and Paz next contend that the district court abused its discretion by admitting into evidence a statement that Martinez had made during plea negotiations with the government. In the statement, which was admitted only as to codefendant Mario Gomez, Martinez asserted that Gomez had never driven to Minnesota with cocaine. Although the appellants' challenges to the admission of this statement differ somewhat, none of the claims has merit.

### A. *Martinez*

■ Martinez contends that the admission of the statement into evidence was erroneous as to him for several reasons. First, he contends that the admission of the statement violated his Confrontation Clause rights, citing *Bruton v. United States,* 391 U.S. 123, 126, 88 S.Ct. 1620, 1622, 20 L.Ed.2d 476 (1968). There could be no Confrontation Clause violation, however, because the declarant of the statement was Martinez himself. Second, Martinez contends that admission of the statement violated Rule 410 of the Federal Rules of Evidence (also known as Rule 11(e)(6) of the Rules of Criminal Procedure). The Rule provides that statements made in the course of plea negotiations with a government attorney are inadmissible against defendants who participated in those negotiations. Because Gomez did not participate in Martinez's plea discussions, the Rule does not proscribe the statement's admission as to Gomez.

Third, Martinez argues that the admission of his statement regarding Gomez was improper because it will, in the future, chill plea negotiations between defendants and the government. As noted above, however, the statement at issue in this case was not admitted as to Martinez, but only as to Gomez. Martinez has given us no reason to believe that the integrity and efficacy of plea negoti-

ations will suffer because of the possibility that statements made during those negotiations will be admitted as to other coconspirators.

■ Martinez next relies on a Second Circuit case, *United States v. Serna*, 799 F.2d 842 (2d Cir.1986), *cert. denied*, 481 U.S. 1013, 107 S.Ct. 1887, 95 L.Ed.2d 494 (1987), to argue that he was generally prejudiced by the admission of his statement. In *Serna*, at the joint trial of coconspirators Serna and Cinnante, Cinnante sought to introduce a statement made by Serna at Serna's plea negotiations, in which Cinnante had not participated. The statement was that Cinnante was the "wrong man." The Second Circuit upheld the district court's exclusion of this statement even though it was sought to be admitted only as to Cinnante and not as to Serna, the declarant. 799 F.2d at 849. The Court held that "if Cinnante had been allowed to introduce the statement into evidence there is a strong likelihood that the jury would have considered it as evidence against Serna. A limiting instruction would have been ineffective to protect Serna from the devastating impact of the statement that was *tantamount to a confession.*" *Id.* (emphasis added).

The holding of *Serna* is inapposite here because, unlike the declarant of the statement at issue there, Martinez did not contest his complicity in the cocaine conspiracy. Thus, even if Martinez's statement about Gomez were properly characterized as "tantamount to a confession," it was not prejudicial to Martinez. Indeed, Martinez conceded to the jury during closing argument that he had been involved in the drug operation, and sought to contest only the charge of continuing criminal enterprise (CCE), focusing specifically on refuting the element of the CCE charge that he had been an organizer or

supervisor. Accordingly, Martinez's reliance on the *Serna* case is misplaced.

■ Finally, Martinez argues that the admission of his statement about Gomez was prejudicial to his defense to the CCE charge, because the statement demonstrated that Martinez knew who was involved in the conspiracy and, therefore, that he was a supervisor or organizer. We are not persuaded that admission of the statement caused such prejudice to Martinez, however, because we do not believe that one who knows who is in the conspiracy is necessarily a supervisor of that conspiracy. In any case, the district court gave the jury a proper limiting instruction, which we have no reason to believe was ignored. *See United States v. Soria*, 965 F.2d 436, 441 (7th Cir.1992); *United States v. L'Allier*, 838 F.2d 234, 242 (7th Cir.1988); *cf. Bruton*, 391 U.S. at 132–33, 88 S.Ct. at 1625–26 (limited circumstance in which instruction to jury is deemed ineffective). Martinez's claim of prejudice thus fails.

### B. *Testa and Paz*

■ Testa and Paz contend that the admission of Martinez's statement about Gomez was prejudicial to them because, by exculpating Gomez, it implicitly inculpated them. This argument is unpersuasive because it relies on the unsupported premise that, in a joint trial, evidence exculpating one codefendant inculpates the others by its failure to exculpate them. Indeed, as the government argues on appeal, trying coconspirators jointly would be nearly impossible if we were to adopt the implicit inculpation theory advanced by Testa and Paz, because all evidence that tended to exculpate fewer than all codefendants would be inadmissible. In any case, the court instructed the jury to consider Martinez's statement only as to Gomez, and Testa and Paz have given us no reason to believe that the jury could not follow this instruction.[1] *See Soria*, 965 F.2d at 441;

---

1. Testa and Paz cite the following statement attributed to the district court in the transcript: "we credit juries *improperly* with the ability to follow careful instructions and the ability to do so carefully." (emphasis added). The government contends that this quoted statement is merely an erroneous transcription and that the district court used the word "properly," not the word "improperly."

We need not consider whether the court's statement was accurately recorded, however, because even if the district court uttered the quoted statement, such a statement, by itself, does not provide us with a *reason* that the jury would be unable to follow a particular instruction. The presumption that juries will follow instructions would not, therefore, be overcome. *See Soria*, 965 F.2d at 441; *L'Allier*, 838 F.2d at 242.

*L'Allier*, 838 F.2d at 242. Testa's and Paz's contention therefore fails.

Accordingly, we conclude that the district court did not abuse its discretion in admitting the evidence of Martinez's statement about Gomez.

### III. *Paz's Sentence*

■ Finally, Paz challenges his sentence of 192 months imprisonment on the conspiracy count, which was based on a quantity of 50 to 150 kilograms of cocaine. Paz specifically contends that the district court erred in failing to make an express finding that such quantity of cocaine was reasonably foreseeable to him. We are not persuaded.

■ Pursuant to the relevant conduct provision of the United States Sentencing Guidelines, a sentencing court shall determine the appropriate offense level by considering "all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction." Guidelines § 1B1.3.[2] The commentary to § 1B1.3 provides that, in cases of jointly undertaken criminal activity, conduct that is "neither within the scope of the defendant's agreement, nor ... reasonably foreseeable in connection with the criminal activity that the defendant agreed to jointly undertake" should not be considered in calculating the offense level. Guidelines § 1B1.3, comment. (n. 1). The district court's findings of foreseeability are reviewed only for clear error. *United States v. Goines*, 988 F.2d 750, 775 (7th Cir.), *cert. denied*, — U.S. —, 114 S.Ct. 241, 126 L.Ed.2d 195 (1993), *and cert. denied*, — U.S. —, 114 S.Ct. 483, 126 L.Ed.2d 433 (1993), *and cert. denied*, — U.S. —, 114 S.Ct. 558, 126 L.Ed.2d 458 (1993).

Here, the district court found that a quantity of 50 to 150 kilograms of cocaine was reasonably foreseeable to Paz and assigned the appropriate offense level of 36. Guidelines §§ 2D1.4, 2D1.1(c)(4). The district court made this determination after "conservative[ly]" estimating, on the basis of the evidence, that the conspiracy had involved 70 kilograms of cocaine in 1989 and 90 kilograms in 1990, for a total of 160 kilograms. Because the district court then found that Paz had not himself supplied all of that cocaine, it concluded that Paz could reasonably have foreseen 50 to 150 kilograms.

Our review of the record reveals that the district court's finding is amply supported, and it is of no consequence that the district court did not expressly refer to particular witnesses' testimony in making the finding. Among the pieces of evidence supporting the district court's finding is Pluff's testimony that, during the spring, summer and fall of 1989, she sold an average of three to four kilograms of cocaine each week and made at least twenty trips to Chicago to pick up the cocaine for distribution. There was also testimony that Pluff had distributed an average of two to three kilograms of cocaine per week during the summer and fall of 1990, as well as additional amounts during other parts of the year.

Moreover, the government adduced sufficient evidence that Paz was a primary supplier of cocaine during the spring, summer and fall of 1989 and during part of 1990. For example, there was evidence that Martinez had stated that Paz was his supplier, that Pluff had seen Paz deliver cocaine to Martinez and obtain payment from Martinez on many occasions, and that Martinez had called Pluff on almost a weekly basis to tell her of Paz's desire to be paid quickly.

In light of all of the evidence, the district court did not commit clear error in finding that Paz was a primary supplier of the cocaine distribution conspiracy and that he could reasonably have foreseen that the conspiracy involved approximately half the amount of cocaine that it in fact involved. Sentencing Paz on the basis of 50 to 150 kilograms of cocaine was thus proper.

---

**2.** Because Paz was sentenced in May 1992, all references to the Guidelines are to the November

1991 version, which was in effect in May 1992.

## CONCLUSION

The judgments are affirmed.